Joshua I. Schiller (CA Bar No. 330653)
jischiller@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Tel:   (415) 293-6800
Fax:   (415) 293-6899

Benjamin Margulis (*pro hac vice forthcoming*)
bmargulis@bsfllp.com
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Tel:   (212) 446-2300
Fax:   (212) 446-2350

Leonard Bennett (*pro hac vice forthcoming*)
leonard@bblegal.net
BENNETT & BENNETT LAW GROUP, LLC
5000 Sunnyside Avenue, No. 101
Beltsville, MD 20705
Tel:   (240) 398-3140
Fax:   (240) 398-3140

*Attorney for Plaintiffs*
*CHANGING WORLD FILMS LLC,*
*SELTON SHAW, and LANGSTON SHAW*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHANGING WORLD FILMS LLC, SELTON SHAW, and LANGSTON SHAW, <br><br>        *Plaintiffs*, <br><br>      v. <br><br> NATHANIEL PARKER *a/k/a* NATE PARKER, TM FILM FINANCE LLC *d/b/a* TM FILMS, TINY GIANT PRODUCTIONS, LLC *d/b/a* TINY GIANT ENTERTAINMENT, VERTICAL ENTERTAINMENT, LLC, SHELTON JACKSON LEE *a/k/a* SPIKE LEE, and ASP FILM, LLC, <br><br>        *Defendants*. | Case No. 2:22-cv-09021 <br><br> **COMPLAINT FOR COPYRIGHT INFRINGEMENT** <br><br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiffs Selton Shaw, Langston Shaw, and their entertainment company Changing World Films LLC (together "Plaintiffs") hereby bring this Complaint against (i) Nathaniel Parker *a/k/a* Nate Parker, (ii) TM Film Finance LLC *d/b/a* TM Films, (iii) Tiny Giant Productions, LLC *d/b/a* Tiny Giant Entertainment, (iv) Vertical Entertainment, LLC, (v) Shelton Jackson Lee *a/k/a* Spike Lee, and (vi) ASP Film, LLC (together "Defendants") to challenge Defendants' unlawful infringement of Plaintiffs' screenplay titled *A Routine Stop*.  Plaintiffs allege as follows based upon their personal knowledge with respect to their own acts or acts taking place in their presence, and upon information and belief as to all other matters:

**PRELIMINARY STATEMENT**

1.     This is a dispute about a screenplay that was stolen, copied, renamed, made into a film, and released under false pretenses as an original story conceived of and written for the screen by the writer and director Nate Parker.  Plaintiffs bring this action against Defendants under the Copyright Act, 17 U.S.C. §§ 106, *et seq*., for unlawful infringement of copyright, including direct, contributory, and vicarious infringement.

2.     Plaintiffs Selton Shaw and Langston Shaw are brothers who write, produce, and direct films together through their entertainment company, Changing World Films LLC.  In 2017, Plaintiffs wrote a screenplay titled *A Routine Stop*, which focused on police violence against Black men and women and the country's systemic indifference to it.

3.     Plaintiffs submitted their screenplay to the TV One Screenplay Competition in 2017 with the goal of having their screenplay produced into a feature film.  On its website, TV One describes itself a widely distributed cable channel that "serves 57 million households, offering a broad range of real-life and entertainment-focused original programming, classic series, movies and music designed to entertain and inform a diverse audience of adult Black viewers.  In addition to being the home

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

of News One Now, the only live, daily news program targeting Black viewers, the network is best known for its signature programming brand, Unsung. The music biography series tells the untold stories of the greatest R&B and soul artists of our time and has helped define TV One as a trusted storyteller and voice of black culture." The TV One Screenplay Competition labels itself as "promot[ing] the production of creative, contemporary, engaging and relatable screenplays that can be turned into original movies for television." For many of these reasons, the competition was very attractive to the Plaintiffs, who continue to develop a reputation and brand as up-and-coming filmmakers. Although it did not win the competition, Plaintiffs believed that their screenplay tackled a timely and important issue in a unique way.

4.     Then, in 2019, Defendants premiered *American Skin* at the Venice Film Festival, a film with plot lines, characters, and themes substantially similar to those in Plaintiffs' screenplay. Like Plaintiffs' work, *American Skin* also focuses on police violence against Black men and women and the country's systemic indifference to it.

5.     Beyond their identical themes, the similarities between *American Skin* and the screenplay for *A Routine Stop* are uncanny:

a.     In *A Routine Stop*, twin brothers—Romulus and Remus—are pulled over by a white police officer for a routine traffic stop. During the stop, the officer shoots and kills Romulus. After a grand jury decides not to indict the officer for murder, Remus takes matters into his own hands. With the help of friends, he kidnaps the officer, holds him hostage, and puts him through a show trial at gunpoint. The officer and prosecutor who handled the grand jury proceeding ultimately confess to working together to prevent the officer from being indicted. In the end, the police arrest Remus, his friends, the officer, and the prosecutor.

b.     In *American Skin*, a father—Lincoln Jefferson—and his son are pulled over by a pair of white police officers for a routine traffic stop. During the stop, one of the officers shoots and kills Lincoln's son. After a grand jury

COMPLAINT FOR COPYRIGHT INFRINGEMENT

decides not to indict the officer for murder, Lincoln takes matters into his own hands.  With the help of friends, he storms the police station and holds hostage the police officer responsible for his son's death—along with several others, including staff and prisoners—putting him through a show trial at gunpoint.  The officer confesses that he profiled Lincoln and his son, and that he shot the son because he was scared and fell back on his training.  In the end, Lincoln "executes" the officer, with a gun that is empty, and a sniper kills Lincoln.

6.     Defendants copied major themes, characters, story lines, the logline, and other portions of Plaintiffs' screenplay for *A Routine Stop* to create their film, *American Skin*.  Despite their infringement, which was (and continues to be) concealed from the public and the jury of an international film festival, Nate Parker, Spike Lee and the other producer Defendants received a standing ovation after the festival premiere of *American Skin* in 2019, and have profited considerably from its release in theatres, as well as through on-demand and streaming services.  Substantially, with the recognition that he received by winning the Venice Film Festival, Nate Parker has been able to resurrect a Hollywood career that was put on hold after being plagued by criticism that surfaced in 2016 pertaining to allegations of rape made against him as a college student.  Plaintiffs, in turn, have not received one dollar, or an ounce of credit, for their screenplay.   This Complaint therefore seeks to vindicate Plaintiffs' rights and compensate Plaintiffs for the work that Defendants surreptitiously and falsely passed off as their own.

### **THE PARTIES**

#### *Plaintiffs*

7.     Plaintiff Changing World Films LLC is a film production company organized pursuant to District of Columbia law and owned and operated by Plaintiffs Selton and Langston Shaw.  It is registered and has its principal place of business in the District of Columbia.

COMPLAINT FOR COPYRIGHT INFRINGEMENT

8. Plaintiff Selton Shaw is a resident and citizen of Laurel, Maryland, and he works in the District of Columbia. Together with his brother, Plaintiff Langston Shaw, he writes, produces, and directs films. He is a co-author of the screenplay for *A Routine Stop*.

9. Plaintiff Langston Shaw is a resident and citizen of the District of Columbia, and he works in the District of Columbia. Together with his brother, Plaintiff Selton Shaw, he writes, produces, and directs films. He is a co-author of the screenplay for *A Routine Stop*.

10. Shaw Plaintiffs wrote the screenplay for *A Routine Stop* through their company, Plaintiff Changing World Films LLC. The screenplay was written primarily in the District of Columbia.

### *Defendants*

11. Defendant Nathaniel Parker *a/k/a* Nate Parker is an American writer, director, actor, and media personality. He resides at 840 Rim Road, Pasadena, CA 91107. Defendant Parker wrote, directed, and starred in *American Skin*.

12. Defendant TM Film Finance LLC *d/b/a* TM Films ("TM Films") is a film production company that produced *American Skin*. Defendant TM Films is a limited liability corporation duly organized and existing under the laws of the State of California, with its principal place of business at 10880 Wilshire Blvd., Los Angeles, CA 90024.

13. Defendant Tiny Giant Productions, LLC *d/b/a* Tiny Giant Entertainment ("Tiny Giant Entertainment") is a film production company that produced *American Skin*. Defendant Tiny Giant Entertainment is a limited liability corporation duly organized and existing under the laws of the State of California, with its principal place of business at 15821 Ventura Blvd., No. 265, Encino, CA 91436. Defendant Nate Parker is a Member or Manager of Tiny Giant Entertainment and serves as its Creative Director.

COMPLAINT FOR COPYRIGHT INFRINGEMENT

14.     Defendant Vertical Entertainment, LLC ("Vertical Entertainment") is the distributor of *American Skin*.  Defendant Vertical Entertainment is a limited liability corporation duly organized and existing under the laws of the State of California.  Its address is 3261 Kelton Avenue, Los Angeles, CA 90034.

15.     Defendant Shelton Jackson Lee *a/k/a* Spike Lee is an American film screenwriter, actor, director, and producer.  He promoted *American Skin*, the film was presented as a "Spike Lee Presentation" at the 2019 Venice Film Festival, and the poster for *American Skin*'s January 2021 release still states that it is "A SPIKE LEE PRESENTATION."  Defendant Lee resides at 75 S. Elliott Place, Brooklyn, NY 11217.

16.     Defendant ASP Film, LLC, holds the copyright for the *American Skin* motion picture. Defendant ASP Film, LLC, is a limited liability corporation duly organized and existing under the laws of the State of California, with its principal place of business at 21031 Ventura Blvd. Ste. 1110, Woodland Hills, CA 91364.  Defendant Parker is a Member or Manager of ASP Film, LLC.

17.     No defendant named herein owns or controls the copyright in *A Routine Stop* or has obtained the necessary license to use Plaintiffs' screenplay for *A Routine Stop*.

## JURISDICTION AND VENUE

18.     This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 1338(a).  This Court also has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because no plaintiff shares a state of citizenship with any defendant and the amount in controversy exceeds $75,000.

19.     This Court has general personal jurisdiction and specific personal jurisdiction over Defendants because Defendants reside in this district or conduct systematic and continuous business in this district; Plaintiffs' allegations herein arise from action and contact by Defendants in this district; and Defendants committed a substantial part of the acts of infringement alleged in the Complaint within this district.

20.     Defendant Parker wrote, directed, and promoted *American Skin* in Los Angeles, California.  He also resides in Pasadena, California.

21.     Defendant TM Films negotiated its agreements related to *American Skin* through its employees and agents in the Los Angeles metropolitan area.  Its principal place of business is in Los Angeles, California.

22.     Defendant Tiny Giant Entertainment's principal place of business is in Encino, California.

23.     Defendant Vertical's sales and marketing efforts to distribute the film principally took place within the Los Angeles metropolitan area.  It is also located in Los Angeles, California.

24.     Defendant ASP Film, LLC's principal place of business is in Woodland Hills, California.

25.     Defendant Lee has admitted that he is subject to jurisdiction in this district in a separate litigation.  He has conducted business in California, including in this district.  In December 2021, for example, Defendant Lee entered into a multi-year movie deal with Netflix, a California company.  He also owns and manages companies with registered agents in California.  His furnishing company, Satchel 'N' Jackson Company, Inc., entered into an agreement to promote *American Skin* with Defendant ASP Film, LLC, a company which conducts its business in the Los Angeles metropolitan area.

26.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in this district, or a substantial part of the property that is the subject of the action is situated in this district. Venue is also proper in this Court pursuant to 28 U.S.C. § 1400(a) because defendants or their agents reside or may be found in this district.

COMPLAINT FOR COPYRIGHT INFRINGEMENT

# **FACTUAL BACKGROUND**

### *Plaintiffs' Filmmaking Careers*

27.     Plaintiffs Selton and Langston Shaw have been creating films for over fifteen years.  They are talented creators who have gained recognition for their work writing, directing, and producing "original films that resonate with the everyday person."[1]  Over the course of their careers, they have created three short films, two features, and an eight-part web series.

28.     In 2006, Plaintiff Selton Shaw won the AXE Black Filmmaker's Series Competition for his directorial debut of the short film, *The Let Out Guys*. The film premiered at the American Black Film Festival ("ABFF"), which was created in 1997 to provide a platform for "emerging Black artists,"[2] and holds an annual event for "recognizing Black talent and showcasing quality film and television content by and about people of African descent."[3]  After premiering at the ABFF, *The Let Out Guys* was shown on a ten city screening tour.

29.     After the success of *The Let Out Guys*, the Shaw brothers joined forces to form Changing World Films LLC, with the aim of independently producing and distributing their own films.  Since 2008, they have released four independent films through their company.

30.     In 2009 and 2010, the Plaintiffs' short film *How To Cheat on Your Girlfriend*, screened as an official selection at the Martha's Vineyard African-American Film Festival and the Urban Suburban Film Festival (they would return in 2012 with another official selection, their feature film *Dream Cash*).  Also in 2010, the brothers' short film *Nine Minutes and 30 Seconds* was part of the official selection for the Mid-Atlantic Black Film Festival.

---

[1] CHANGING WORLD FILMS CATALOGUE, https://www.changingworldfilms.com/copy-of-catalogue (last visited Apr. 29, 2022).

[2] About the ABFF, AMERICAN BLACK FILM FESTIVAL, https://www.abff.com/miami/about-the-abff/ (last visited Apr. 29, 2021).

[3] *Id.*

COMPLAINT FOR COPYRIGHT INFRINGEMENT

31.     In 2010, Plaintiff Selton Shaw pitched *The Let Out Guys* as a feature film and won director and producer, Robert Townsend's, Ultimate Pitch Master Competition.   The competition was again sponsored by ABFF.   In 2014, Plaintiff Selton Shaw was a finalist in the screenplay competition organized by the cable television network UP TV, and had a film optioned by the network.

### *Plaintiffs' Screenplay for A Routine Stop*

32.     In 2017, Plaintiffs wrote an original screenplay titled *A Routine Stop*—the subject of the instant litigation.   The screenplay concerns the widespread problem of police violence against African Americans and the country's systemic indifference to it.[4]

33.     Plaintiffs registered a copyright for *A Routine Stop* on September 29, 2021. The registration number for the copyright is PA0002314277.

34.     In the screenplay for *A Routine Stop*, twin brothers—Romulus and Remus—are pulled over by a white police officer for a routine traffic stop.   During the stop, the officer shoots and kills Romulus.   A grand jury is convened and subsequently chooses not to indict the police officer for murder.

35.     Feeling betrayed by the justice system, Remus takes matters into his own hands. Along with several friends, Remus kidnaps the officers and holds him hostage at a recording studio, where he is put through a show trial, complete with a jury. The trial is broadcast to the general public. The officer and the prosecutor who handled the grand jury process confess that they worked together to ensure that the officer would not be indicted.   Ultimately, the police raid the recording studio, arrest Remus and his friends, along with the police officer and prosecutor.

36.     The screenplay for *A Routine Stop* is a wholly original work of performing art by Plaintiffs that is the product of Plaintiffs' research, conceptualization, creation, development, and writing, and represents the substantial investment by Plaintiffs of their time, energy, effort, and resources (including financial resources).

---

[4] Plaintiffs' screenplay for *A Routine Stop* is attached to this Complaint as Exhibit A.

37.     On February 15, 2017, Plaintiffs submitted their screenplay for *A Routine Stop* to the 2017 TV One Screenplay Competition with the goal of having the screenplay potentially produced into a feature film.

### The TV One Screenplay Competition

38.     The TV One Screenplay Competition is run by TV One—a television network serving 59 million households and offering a range of real-life and entertainment-focused original programming, movies, and music designed to "entertain and inform a diverse audience of adult black viewers."[5]

39.     The TV One Screenplay Competition is organized with and supported by the American Black Film Festival.  In 2017, for example, finalists in the Competition received a trip to the 21st Annual ABFF (where the winning screenplay would be announced).  The winning entrant would then have the opportunity to develop their screenplay into a full movie that would premier at the next ABFF in 2018.

40.     The 2017 competition was not the first that Plaintiffs entered.  They had submitted other screenplays in prior years, too, and had been selected as finalists.  They decided to try again with *A Routine Stop*.

41.     In submitting the screenplay for *A Routine Stop*, Plaintiffs agreed to a set of terms that, among other things, stated that "TV One will not make any use of any legally protectable portion of your Material unless you and TV One have agreed in writing concerning your compensation for such use."  Another portion stated that "TV One agrees to use reasonable efforts to keep all the Material confidential."  Plaintiffs therefore reasonably expected that if their work was not selected to win the competition, no one—other than themselves—could or would use their work, to say nothing of making unauthorized and infringing copies.

---

[5] TVOne Screenplay Competition Finalists, TVONE, https://tvone.tv/74085/tv-one-announces-fourth-annual-american-black-film-festival-screenplay-competition-finalists/ (last visited Apr. 29, 2022).

COMPLAINT FOR COPYRIGHT INFRINGEMENT

42.     While *A Routine Stop* was not selected as a finalist in the TV One Screenplay Competition in 2017, Plaintiffs nevertheless considered their screenplay to showcase a unique approach to tackling an urgent issue affecting the country.  After the competition, Plaintiffs focused on developing other new and original projects, but continued to believe they could eventually make *A Routine Stop* into a film.  Then, in 2019, they learned about Defendant Nate Parker's new film, *American Skin*.

### Nate Parker and American Skin

43.     Defendant Nate Parker is an American actor, writer, and director.  He has appeared in numerous films starting in 2005, including *The Secret Life of Bees*, *Red Tails*, and *Red Hook Summer*.

44.     In 2016, Defendant Parker made his directorial debut with *The Birth of a Nation*, which portrayed the story of Nat Turner, the slave who led the famous 1831 slave rebellion in Southampton County, Virginia; Defendant Parker also wrote and starred in the film.  *The Birth of a Nation* premiered at the Sundance Film Festival in 2016 and Fox Searchlight Pictures purchased worldwide rights to the film for $17.5 million (the largest deal at Sundance at the time).

45.     In mid-2016, just as *The Birth of a Nation* began attracting attention as a possible Academy Award contender, an old rape allegation against Defendant Parker resurfaced, spurred on—in part—by the portrayal of a fictionalized rape in the film.  Faced with mounting negative publicity (not least of all due to his mishandling of related press inquiries), Defendant Parker gradually receded from public view.

46.     Little wonder, then, that Defendant Parker sought to copy Plaintiffs' work.  The screenplay for *A Routine Stop* presents the issue of systemic violence (and societal indifference to violence committed on) Black men and women as a revenge fantasy: an ordinary man, feeling betrayed by the system that is supposed to protect him and his loved ones, takes it upon himself to right the wrong committed on his brother by exposing the failure of the system itself.  In *A Routine Stop*, Defendant Parker saw a

way to redeem himself and rehabilitate his image.  So, he began to copy Plaintiffs' work.

47.    In 2019, Defendants premiered at the Venice Film Festival a film titled, *American Skin*.  The film focuses on the ongoing problem of police violence against Black men and women and the country's systemic indifference to it.

48.    In *American Skin*, a father named Lincoln Jefferson and his son are pulled over by a pair of white police officers during a routine traffic stop.  During the stop, one of the officers shoots and kills Lincoln's son.  A grand jury is convened and decides not to indict the officer for murder.  Feeling betrayed by the justice system, Lincoln, with several friends, storms the police station and holds hostage the police officer responsible for his son's death—along with several others, including staff and prisoners.

49.    The officer is put through a show trial, complete with a jury, that a documentary crew records.  The officer confesses that he profiled Lincoln and his son. He also confesses that he shot the son because he was scared and fell back on his training.  The jury convicts the officer.  At the end of the film, Lincoln "executes" the officer, with a gun that is empty, and a sniper kills Lincoln.

50.    Defendants were involved in the making, acting, directing, promotion, creation, filming, distribution, and copyrighting of the film:

a.    Defendant Parker is credited with writing and directing the film *American Skin* and starred in the film as Lincoln Jefferson, the father.

b.    Defendants Tiny Giant Entertainment and TM Films produced *American Skin*.

c.    Defendant Spike Lee, an award-wining American film director, producer, screenwriter, and actor who has produced more than 35 films since 1983 and has written and directed major films such as *She's Gotta Have It*, *Do the Right Thing*, *Malcolm X*, and *Da 5 Bloods*, publicly endorsed and promoted *American Skin*.  Defendant Parker provided Defendant Lee with a private

screening of *American Skin* before its commercial release.   Following his review, Defendant Lee agreed to promote the film and permit his name to be used in connection with the film.   Defendant Lee, through his furnishing company, subsequently entered into an agreement with Defendant ASP Film, LLC to "provide mutually agreed promotional services for the [film] in connection with the screening of the project at the 2019 Venice Film Festival." The agreement also provided that Defendant Lee would receive credit in the film and its trailer.  At the Venice Film Festival, the film was billed as a "Spike Lee Presentation."

        d.     Defendant Vertical Entertainment, a film production and distribution company founded by producers Richard B. Goldberg and Mitch Budin in 2012, acquired the North American rights to *American Skin* and distributed the film.

        e.     Defendant ASP Film, LLC holds the copyright for *American Skin*.

51.     *American Skin* won the Filming Italy Award for "Best Film" of the Sconfini Section of the Venice Film Festival.  *American Skin* was eligible for this award, which aims to promote Italian film abroad, because it was backed by Eagle Pictures, an Italian film company.

52.     After its premier at the Venice Film Festival, *American Skin*'s broader theatrical debut was delayed due to the COVID-19 pandemic.  Ultimately, the film released in theaters in the United States on January 15, 2021.  The film premiered at a theater in Montclair, California.

53.     Due to the pandemic, however, *American Skin* generated around $300,000 in box office revenue.  On-demand numbers were better, however, with *American Skin* generating $4,000,000 in its first two weeks on demand.

54.     The film remains available for on-demand viewing and on streaming platforms, including to viewers in California, and so the Defendants continue to profit from *American Skin*.  For example, Defendants profit each time *American Skin* is

watched on-demand or streamed online for a fee to the viewer, or each time merchandise relating to *American Skin* is sold. Defendants also likely receive compensation from online streaming services (*e.g.*, Amazon Video) that stream *American Skin*.

### American Skin *Is Substantially Similar* To A Routine Stop

55.    Defendants' film, *American Skin*, is substantially similar to Plaintiffs' screenplay for *A Routine Stop*. The similarities range from core themes to major plot points to incidental details. For example:

<u>The Logline</u>

56.    The loglines for both *A Routine Stop* and *American Skin* are substantially similar. Loglines are generally one sentence synopses of a film or script that help convey the central theme and purpose of the story.

57.    The logline for *A Routine Stop* reads: "When a cop isn't charged in the shooting death of an unarmed black man, the victim's brother takes the law **into his own hands**" (emphasis added).

58.    The logline for *American Skin* reads: "A Marine veteran working as a school janitor tries to mend his relationship with his son after his divorce. When his son is killed by a police officer found innocent without standing trial, he takes matters **into his own hands**" (emphasis added).

<u>Themes And Plot Lines</u>

59.    In *A Routine Stop*, a white police officer who kills an unarmed black man is not charged with murder; in *American Skin*, a white police officer who kills an unarmed black youth is not charged with murder.

60.    In *A Routine Stop*, the main character feels betrayed by the justice system and decides to take matters into his own hands to get street justice; in *American Skin*, the main character decides to take matters into his own hands to get street justice.

COMPLAINT FOR COPYRIGHT INFRINGEMENT

61.     In *A Routine Stop*, the main character, with a group of his friends, kidnaps the white police officer involved in the shooting; in *American Skin*, the main character, with a group of his friends, kidnaps the white police officer involved in the shooting.

62.     In *A Routine Stop*, the main character puts the white police officer on trial for the murder he committed; in *American Skin*, the main character puts the white police officer on trial for the murder he committed.

63.     In *A Routine Stop*, the main character represents the prosecution in the trial; in *American Skin*, the main character represents the prosecution in the trial.

64.     In *A Routine Stop*, the white officer involved in the shooting has a wife and a young son; in *American Skin*, the white officer involved in the shooting has a wife and a young son.

65.     In *A Routine Stop*, at the beginning of the trial, the white police officer who is charged expresses that the main character has no authority to charge him; in *American Skin*, at the beginning of the trial, the white police officer who is charged expresses that the main character has no authority to charge him.

66.     In *A Routine Stop*, the main character is armed with a handgun for the entire trial; in *American Skin*, the main character is armed with a handgun for the entire trial.

67.     In *A Routine Stop*, the white police officer on trial explained in rage that he was just trying to make it home; in *American Skin*, the white police officer on trial explained that he was just trying to make it home.

68.     In *A Routine Stop*, the main character puts his gun to the head of the white police officer to kill him after the officer is found guilty; in *American Skin*, the main character puts his gun to the white police officer's head to kill him after the officer is found guilty.

69.     In *A Routine Stop*, at the last minute the main character decides not to kill the white police officer; in *American Skin*, at the last minute the main character decides not to kill the white police officer.

COMPLAINT FOR COPYRIGHT INFRINGEMENT

Characters

70.     In both *A Routine Stop* and in *American Skin*, the main character is depicted as feeling helpless and betrayed by the criminal justice system, and takes matters into his own hands.  Both films also describe their main characters as unshaven, intelligent, African American men, who have strong viewpoints on justice.

71.     In *A Routine Stop* and in *American Skin*, a police captain is a supporting character and tries to end the standoff and trial without violence.

72.     In *A Routine Stop* and in *American Skin*, the mother of the deceased victim is a supporting character.

73.     In *A Routine Stop* and in *American Skin*, the friend of the main character is portrayed as rough and with nothing to lose.  This friend also has a similar name in both works: in *A Routine Stop*, he is named Carter "Duck" Duckworth; in *American Skin*, he is named Omar "Derwood" Scott.

74.     In *A Routine Stop* and in *American Skin*, there is a prosecutor who does not indict the police officer who was charged.

### Defendants Had Access to Plaintiffs' Screenplay for A Routine Stop.

75.     Defendants had access to Plaintiffs' screenplay for *A Routine Stop*.

76.     Plaintiffs submitted their screenplay for *A Routine Stop* to the 2017 TV One Screenplay Competition.

77.     TV One is an established television network focusing on programming and content aimed at predominantly African American audience.  The 2017 TV One Screenplay Competition was administered and judged in partnership with the American Black Film Festival (ABFF).  The competition generally is judged by a team of industry professionals.  As part of the screenplay competition, TV One had actors play out scenes from several entries.

78.     Defendant Parker has been involved in events with the ABFF; for example, in 2016 Parker spoke at the 20th annual ABFF, and presented a "First Look" at *The Birth of a Nation*.[6]

79.     Omari Hardwick, who plays Omar "Derwood" Scott in *American Skin*, also has close connections with the ABFF, having received the Distinguished ABFF Alumni Award in 2018.

80.     Mr. Hardwick, in fact, was one of the actors who played out scenes from entries in the 2017 TV One Screenplay Competition.

81.     Defendants therefore had access to the screenplay for *A Routine Stop* in a number of ways through either TV One or ABFF:

a.     Mr. Hardwick, star of *American Skin* and friend to Mr. Parker, was involved in the 2017 TV One Screenplay Competition and either provided or acted out the screenplay Plaintiffs submitted for *A Routine Stop* to Defendant Parker;

b.     An individual connected with the 2017 TV One Screenplay Competition or the ABFF made the screenplay for *A Routine Stop* available to a named defendant or Mr. Hardwick; and/or

c.     In the intervening two years between Plaintiffs' submission of the screenplay to the 2017 TV One Screenplay Competition and the 2019 premiere of *American Skin* at the Venice Film Festival, Defendant Parker obtained a copy of Plaintiffs' screenplay through another channel.

82.     Defendants knew that stealing and copying Plaintiffs' screenplay was wrong.  Defendants are seasoned members of the film industry, who understand that original creative works are proprietary and cannot be used lawfully without following certain steps (such as obtaining a license, etc.).

---

[6] *See* ABFF First Look Conversations Confirmed with Nate Parker, Aja Naomi King and Gabrielle Union for "The Birth of a Nation," AMERICAN BLACK FILM FESTIVAL (May 24, 2016), https://www.abff.com/miami/central-intelligence-to-screen-as-opening-night-film-at-the-20th-abff-in-miami/.

83.     Instead of lawfully acquiring the rights to use Plaintiffs' screenplay for *A Routine Stop*, or compensating Plaintiffs for the lawful use of their work, Defendants copied and pulled major characters, themes, and plot points for use in their film *American Skin*.

### *Defendants Continue to Unlawfully Infringe Plaintiffs' Screenplay and Plaintiffs Have Been Irreparably Harmed by Defendants' Infringement.*

84.     Defendants have unlawfully copied, reproduced, published, copyrighted, and distributed Plaintiffs' screenplay for *A Routine Stop*.

85.     Plaintiffs have suffered monetary harm and irreparable harm from Defendants' actions.

86.     Because of Defendants' infringement, Plaintiffs have been deprived of the opportunity to be recognized and rewarded by their peers, and the public, for their screenplay for *A Routine Stop*.  Plaintiffs also missed out on the opportunity to win an award at the Venice Film Festival, which would have opened new doors, including opportunities for future financial gain, business ventures, and creative collaborations.

87.     While Defendants have profited and been rewarded tremendously for *American Skin*; Plaintiffs' screenplay was never purchased by a production or distribution company and Plaintiffs have not earned one dollar from their work.  Rather than steal Plaintiffs' screenplay for *A Routine Stop*, Defendants should have sought to contract with Plaintiffs for the lawful purchase or license and use of the screenplay and to provide the required compensation, credit, and acknowledgement that both the law and the interests of justice require.

### COUNT I: Direct Copyright Infringement

88.     Plaintiffs repeat and re-allege each and every allegation in the preceding paragraphs as if fully set forth herein.

89.     Defendants have engaged, and continue to engage, in the unauthorized reproduction, adaptation, distribution, and public performance of the screenplay for *A Routine Stop*, a copyrighted work for which Plaintiffs are the legal or beneficial

copyright owner.  The foregoing activity constitutes direct infringement by Defendants in violation of 17 U.S.C. §§ 106 and 501 et seq.

90.    Defendants' acts of infringement are willful, intentional, and purposeful, in disregard of and with indifference to Plaintiffs' rights.

91.    As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights, Plaintiffs are entitled to recover, pursuant to 17 U.S.C. § 504(b) the actual damages suffered by it as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages, as will be proven at trial.

92.    Plaintiffs are further entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

93.    Defendants' conduct is causing, and unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money, such that Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 702, Plaintiffs are entitled to a permanent injunction prohibiting further infringements of its exclusive rights under copyright.

**COUNT II: Contributory Copyright Infringement**

94.    Plaintiffs repeat and re-allege each and every allegation in the preceding paragraphs as if fully set forth herein.

95.    Defendants have copied, adapted, reproduced, distributed, and allowed to be publicly presented, without authorization the screenplay for *A Routine Stop* for which Plaintiffs are the legal or beneficial copyright owners. The foregoing activity constitutes direct infringement by Defendants in violation of 17 U.S.C. §§ 106 and 501 et seq.

96.    Defendants are also liable as contributory copyright infringers because they intentionally induced the direct infringement as described above. For example, Defendants TM Films and Tiny Giant distributed *American Skin* to the American

public contributing to the infringement of Plaintiffs' copyright; and Defendant Lee promoted and intentionally created publicity and interest in *American Skin*.

97.   As a result, Defendants are contributorily liable for the infringement of Plaintiffs' copyright for the screenplay, *A Routine Stop*, in violation of Plaintiffs' exclusive rights under the copyright laws of the United States.

98.   The infringement of Plaintiffs' right in its copyrighted work constitutes a separate and distinct act of infringement.

99.   Defendants' acts of infringement are willful, intentional, and purposeful, in disregard of and with indifference to Plaintiffs' rights.

100.   As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights, Plaintiffs are entitled to recover, pursuant to 17 U.S.C. § 504(b) the actual damages suffered by it as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages, as will be proven at trial.

101.   Plaintiffs are further entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

102.   Defendants' conduct is causing, and unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money, such that Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 702, Plaintiffs are entitled to a permanent injunction prohibiting further infringements of its exclusive rights under copyright.

## COUNT III: Vicarious Copyright Infringement

103.   Plaintiffs repeat and re-allege each and every allegation in the preceding paragraphs as if fully set forth herein.

104.   Defendants have copied, adapted, reproduced, distributed, and allowed to be publicly presented, without authorization the screenplay for *A Routine Stop* for which Plaintiffs are the legal or beneficial copyright owners. The foregoing activity

constitutes direct infringement by Defendants in violation of 17 U.S.C. §§ 106 and 501 et seq.

105.   Defendants Lee, TM Films, Tiny Giant Entertainment, and Vertical Entertainment are liable as vicarious copyright infringers for the direct infringement as described above. These four defendants have the right and ability to supervise and control the infringing activities that occur through their promotion, production, and distribution of a film, and at all relevant times, have derived direct and substantial benefits from the infringement of Plaintiffs' copyrighted works occurring through them.

106.   As a result, Defendants Lee, TM Films, Tiny Giant Entertainment, and Vertical Entertainment are vicariously liable for the unlawful infringement of Plaintiffs' copyright in the screenplay for *A Routine Stop*, in violation of Plaintiffs' exclusive rights under the copyright laws of the United States.

107.   The infringement of Plaintiffs' right in its copyrighted work constitutes a separate and distinct act of infringement.

108.   Defendant Lee, TM Films, Tiny Giant Entertainment, and Vertical Entertainment's acts are willful, intentional, and purposeful, in disregard of and with indifference to Plaintiffs' rights.

109.   As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights, Plaintiffs are entitled to recover, pursuant to 17 U.S.C. § 504(b) the actual damages suffered by it as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages, as will be proven at trial.

110.   Plaintiffs are further entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

111.   Defendants' conduct is causing, and unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money, such that Plaintiffs have no adequate remedy

COMPLAINT FOR COPYRIGHT INFRINGEMENT

at law. Pursuant to 17 U.S.C. § 702, Plaintiffs are entitled to a permanent injunction prohibiting further infringements of its exclusive rights under copyright.

## DEMAND FOR TRIAL BY JURY

112.     Plaintiffs pursuant to Rule 38 of the Federal Rules of Civil Procedure hereby demand trial by jury of all issues so triable in the present action.

## PRAYER FOR RELIEF

For the foregoing reasons, Plaintiffs pray for judgment from this Court against Defendants as follows:

1.     For a declaration that Defendants have willfully infringed the copyright that Plaintiffs own in *A Routine Stop* in violation of the Copyright Act; and

2.     For actual damages pursuant to 17 U.S.C. § 504(b), including Defendants' profits from infringement, in an amount to be proven at trial, arising from Defendants' willful violations of Plaintiffs' rights under the Copyright Act;

3.     For statutory damages pursuant to 17 U.S.C. § 504(c);

4.     For such equitable relief under Title 17, Title 28, and/or the Court's inherent authority as is necessary to prevent and restrain permanently Defendants, their directors, officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with them, from infringing Plaintiffs' copyright in the screenplay for *A Routine Stop*, in any manner, and from reproducing, adapting, displaying, publishing, advertising, promoting, selling, offering for sale, marketing, or distributing Plaintiffs' copyrighted material in *A Routine Stop*, and from participating or assisting or authorizing such conduct in any way;

5.     For an order that Defendants shall within ten days of the date of the Court's order deliver up for impounding, destruction, or other disposition, as Plaintiffs determine, all materials that infringe on *A Routine Stop*, in Defendants' possession, custody, or control;

6.     For an order that Defendants shall notify in writing any current or future licensee of *American Skin*, that *American Skin* infringes Plaintiffs' copyright in the

COMPLAINT FOR COPYRIGHT INFRINGEMENT

screenplay for *A Routine Stop*, and that *American Skin* was not lawfully made under the Copyright Act;

7.    For an award of Plaintiffs' costs and expenses, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505;

8.    For pre-judgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against Defendants; and

9.    For such other and further relief as the Court deems just and proper.

DATE: December 13, 2022                Respectfully submitted,

                                       /s/ *Joshua I. Schiller*
                                       Joshua I. Schiller (CA Bar No. 330653)
                                       BOIES SCHILLER FLEXNER LLP
                                       44 Montgomery Street, 41st Floor
                                       San Francisco, CA 94104
                                       Tel:   (415) 293-6800
                                       Fax:   (415) 293-6899
                                       jischiller@bsfllp.com

                                       Benjamin Margulis (*pro hac vice forthcoming*)
                                       BOIES SCHILLER FLEXNER LLP
                                       55 Hudson Yards
                                       New York, NY 10001
                                       Tel:   (212) 446-2300
                                       Fax:   (212) 446-2350
                                       bmargulis@bsfllp.com

                                       Leonard Bennett (*pro hac vice forthcoming*)
                                       BENNETT & BENNETT LAW GROUP, LLC
                                       5000 Sunnyside Avenue, No. 101
                                       Beltsville, MD 20705
                                       Tel:   (240) 398-3140
                                       Fax:   (240) 398-3140
                                       leonard@bblegal.net

                                       *Attorney for Plaintiffs*
                                       *CHANGING WORLD FILMS LLC,*
                                       *SELTON SHAW, and LANGSTON SHAW*

COMPLAINT FOR COPYRIGHT INFRINGEMENT