UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 22-9021-DMG (PVCx)** | Date | September 12, 2023 |
| Title | *Changing World Films LLC, et al., v. Nathaniel Parker, et al.* | Page | 1 of 11 |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: [IN CHAMBERS] ORDER DENYING DEFENDANTS' MOTION TO DISMISS [20]**

Plaintiffs Selton Shaw, Langdon Shaw, and their company, Changing World Films, LLC, bring copyright infringement claims against various defendants[1] involved in the making of the film *American Skin* ("the Film"). Plaintiffs allege that, without authorization, Defendants used Plaintiffs' screenplay for *A Routine Stop* ("the Screenplay") as the basis for the Film.

The Court has reviewed the Film and the Screenplay and finds that for the purpose of this Motion to Dismiss [Doc. # 20], the works are substantially similar. Plaintiffs have plausibly alleged that Defendants had access to the Screenplay through an intermediary. The Motion is accordingly **DENIED**.

# I.
# BACKGROUND

**A.   *A Routine Stop* Screenplay**

The focus of the Screenplay, written in 2017 and copyrighted in 2021, is police violence against the African American community and systemic indifference toward that violence, with police facing no repercussions for killing unarmed Black civilians. *See* Complaint ¶¶ 32, 33 [Doc. # 1]. The logline is, "When a cop isn't charged in the shooting death of an unarmed black man, the victim's brother takes the law into his own hands." Complaint ¶ 57 (emphasis omitted).

The screenplay begins at a wedding, following which twin brothers Romulus and Remus, who are African American, are stopped by a white police officer, Kyle Tully, for failing to signal

---

[1] Defendants are Nathaniel Parker (the Film's writer, director, and star), TM Film Finance LLC and Tiny Giant Productions, LLC (producers), Vertical Entertainment LLC (the distribution company), Shelton Jackson Lee (a promoter), and ASP Film, LLC (the Film's copyright holder). Complaint ¶¶ 11–16 [Doc. # 1].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 22-9021-DMG (PVCx)** | Date | September 12, 2023 |
| Title | *Changing World Films LLC, et al., v. Nathaniel Parker, et al.* | Page | 2 of 11 |

a lane change as they drive home.  Screenplay at 1–6, 23 [Doc. # 1-1].[2]  The audience and the officer believe that Remus, a "straight . . . arrow" college graduate with no criminal record, is driving, while Romulus, "a criminal with a rap sheet longer than a roll of toilet tissue," is his passenger.  *Id.* at 6, 8, 26.

The Screenplay then jumps forward one year, to Remus kidnapping the officer at gunpoint and taking him to a recording studio.  *Id.* at 7, 12.  The audience learns that during the traffic stop, the officer shot and killed Romulus when he reached for the vehicle registration, a mostly white grand jury did not indict the officer, and Remus intends to hold a mock trial and to shoot the officer if he is found guilty.  *Id.* at 7–11, 15, 35, 41.  Remus and two of Romulus' friends have joined forces, and they broadcast a mock trial in which Remus is the prosecuting attorney, his associates "Pooh Bear" and "Duck" are the judge and the bailiff, and the officer represents himself.  *Id.* at 18.  The "jury" is blindfolded and handcuffed in a sound booth.  *Id.* at 19.  Tension builds as the Screenplay switches between the recording studio where the "trial" unfolds and a police station where the police chief leads efforts to locate the recording studio.  *Id.* at 11.

Remus reveals his witnesses, his mother, the prosecutor from the grand jury proceedings, and himself.  *Id.* at 28, 40, 50.  The audience learns that the officer has committed a variety of misdeeds, including engaging in an extramarital affair and receiving a DUI and writeups for excessive force.  *Id.* at 55–57.  Further, the prosecutor and officer colluded to prevent the officer from being indicted.  *Id.* at 58.  The officer tries to justify the shooting but ultimately admits that he did not mean to shoot Romulus and that he was afraid and "jumpy."  *Id.* at 70–72.

Police burst in shortly after the officer's confession and arrest not only Remus but the officer and the prosecutor.  *Id.* at 75, 81.  In a series of twists, the audience learns that the "jury" was composed of mannequins and the officer's wife and child, both of whom voted to convict the officer.  Remus, however, decided not to shoot the officer, instead locking the officer and the prosecutor in a recording booth.  *Id.* at 76.  Some measure of justice is ultimately achieved:  the officer is indicted and fired, the prosecutor is disbarred, and no charges are brought against Remus and his associates.  *Id.* at 83–84.  It is also revealed through a flashback that "Remus" is, in fact, Romulus, since the two switched identification during the traffic stop.  A sympathetic police officer helps Romulus to continue to pose as Remus, and Romulus begins a new life, free of his criminal record and with Remus' name.  *Id.* at 84–86.

---

[2] Citations to the record are to the CM/ECF pagination.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 22-9021-DMG (PVCx) | Date | September 12, 2023 |
|---|---|---|---|
| Title | *Changing World Films LLC, et al., v. Nathaniel Parker, et al.* | Page | 3 of 11 |

**B.** *American Skin*[3]

*American Skin* premiered in 2019 and similarly explores themes of racial profiling, police violence, and systemic racism.  The logline for the film is, "A Marine veteran working as a school janitor tries to mend his relationship with his son after his divorce.  When his son is killed by a police officer found innocent without standing trial, he takes matters into his own hands."  Complaint ¶ 58 (emphasis omitted).

*American Skin* opens with two white police officers conducting a traffic stop of two Black civilians—the protagonist, Lincoln Jefferson, who is driving, and his 14-year-old son Kajani, in the passenger's seat.  The interaction escalates when Lincoln does not have his current insurance card, and Kajani takes his cellphone out to record.  Although not depicted in the opening scene, the audience learns that Officer Mike Randall shoots and kills Kajani during the stop.

One year later, a student documentary team interviews Jefferson and his family, as part of a documentary being made about Kajani's death.  Through interviews and flashbacks, the audience learns that Jefferson is divorced, a devoted father who works as a janitor so that Kajani can attend a private high school, and a veteran of the Iraq War.  After a grand jury fails to indict the officer who shot Kajani, Lincoln and his friends kidnap the police chief and storm the police precinct, taking the officer, the documentary team, and other occupants of the precinct hostage.  Lincoln reveals that he intends to hold a mock trial, with himself as the prosecutor and the arrestees, employees of the precinct, and civilians as jurors.  The documentary team records the trial, and the jurors and police officers discuss topics such as racism, policing, classism, education, slavery, exploitation, patriotism, and women's rights.

Officer Randall initially claims that the officers stopped Jefferson because he was speeding.  He ultimately admits, however, that he racially profiled Lincoln (who was driving in an affluent neighborhood) and that he did not intend to shoot Kajani but was frightened and fell back on his training.  The jury convicts Randall, and Lincoln acts as if he is going to shoot Randall—only to reveal that his handgun is unloaded.  He then explains that he never intended to shoot Randall, who has shown remorse for his actions, only to "make the world see" his perspective.  *See* Film at 1:19:40.  Lincoln surrenders but—notwithstanding Randall's attempts to protect him—is killed by a police sniper.  The film concludes by showing media clips explaining the situation away, for instance connecting Lincoln to religious extremism.

---

[3] A DVD copy of *American Skin* is on file with the Court and except as otherwise noted, is the source for the summary of the Film in this subsection.  [*See* Doc. # 20-1 at 3.]  The Court takes judicial notice of the Film without converting this matter to summary judgment.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 22-9021-DMG (PVCx) | Date | September 12, 2023 |
|---|---|---|---|
| Title | *Changing World Films LLC, et al., v. Nathaniel Parker, et al.* | Page | 4 of 11 |

## II.
## DISCUSSION

### A.    Legal Principles

The Copyright Act vests a copyright owner with the exclusive right to reproduce, distribute copies of, and prepare derivative works based on the copyrighted work.  17 U.S.C. § 106.  To prevail on a claim of copyright infringement, a plaintiff must show (1) ownership of a valid copyright and (2) infringement—defendant's copying of the protected elements of plaintiff's work.  *See Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1065 (9th Cir. 2020).  "Proof of copyright infringement is often highly circumstantial[.]" *Id.* at 481.  Where, as here, there is not direct evidence of copying, a copyright plaintiff must make a fact-based showing that defendant had "access" to the plaintiff's work and that the two works are "substantially similar." *Id.*

A defendant may seek dismissal of a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Such a dismissal is appropriate if the plaintiff fails to present a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory.  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).  To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  In evaluating the sufficiency of a complaint, courts must accept all factual allegations (but not legal conclusions) as true.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

### B.    Access

Plaintiffs' primary theory of access is that Defendant Parker obtained the Screenplay from Omari Hardwick, who was involved in the TV One Screenplay Competition, an actor in the Film, and a friend of Defendant Parker.  Plaintiffs allege that they submitted the Screenplay to the Competition on February 15, 2017 (although the Screenplay was not selected as a finalist), actors generally play out scenes from several entries as part of the competition and judging, and Hardwick was one of those actors.  *See* Complaint ¶¶ 75–81.  The Complaint theorizes that Hardwick thus obtained the Screenplay and provided or "acted [it] out" to Defendant Parker.  *Id.* ¶ 81.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 22-9021-DMG (PVCx)** | Date | September 12, 2023 |
| Title | *Changing World Films LLC, et al., v. Nathaniel Parker, et al.* | Page | 5 of 11 |

"Proof of access requires an opportunity to view or to copy plaintiff's work . . . often described as providing a 'reasonable opportunity' or 'reasonable possibility' of viewing the plaintiff's work." *Three Boys Music Corp.*, 212 F.3d at 482. Reasonable access is proven by "a particular chain of events" established "between the plaintiff's work and the defendant's access to that work[.]" *Id.* This includes possession of plaintiff's work by a third party with whom both the plaintiff and defendant were dealing. *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 657 F.2d 1059, 1062 (9th Cir. 1981). Reasonable access means "more than a bare possibility" of access, however. *Three Boys Music Corp.*, 212 F.3d at 482 (internal quotation marks and citation omitted).

Plaintiffs' allegations of access through Hardwick go beyond mere speculation or conjecture, crossing the line from possibility into plausibility. *Accord Marcus v. ABC Signature Studios, Inc.*, 279 F. Supp. 3d 1056, 1064–65 (C.D. Cal. 2017) (ruling that the following allegations of access were adequate: a TV creator had a close business relationship with Will Smith, Smith was the director of a company that co-sponsored a script writing contest, and Plaintiff submitted a script to the contest).

Defendants cite three unpublished rulings dismissing claims for lack of plausible allegations of access, but these rulings do not persuade the Court to dismiss the allegations of access through Hardwick here. In *Evans v. Warner Brothers Entertainment, Inc.*, the plaintiff promoted a book to unnamed actors at a film festival and alleged that through these actors, the book ended up in a producer's hands. Entirely lacking were any allegations of the unnamed actors' relationship with the producer, if any. CV 18-3951-DSF (ASx), 2018 WL 6133660, at *3 (C.D. Cal. Sept. 17, 2018). In *Schkeiban v. Cameron*, the plaintiff asked a third-party to give a copy of the work to the defendant, a famous director, and that the third-party told the plaintiff that he had done so—but there was no evidence of who that third party was, about his relationship with the defendant (if any), or why the defendant would review the work. CV 12-0636-R (MANx), 2012 WL 12895721, at *1 (C.D. Cal. July 20, 2012). There are obvious reasons why a Court would find such allegations of access implausible, under those circumstances.

Finally, in *Griffin v. Peele*, the plaintiff alleged that she had sent her manuscript to a woman who was friends with a writer, who was the defendant's brother-in-law, who may, in turn, have shared the book with the defendant. Although the plaintiff in this case had described the relationships between the various intermediaries and parties, she had not alleged these dealings involved "some overlap in subject matter to permit an inference of access." No. ED CV 17-01153-JGB (KKx), 2017 WL 8231241, at *6 (C.D. Cal. Oct. 18, 2017); *see also Loomis v. Cornish*, 836 F.3d 991, 995 (9th Cir. 2016) ("[T]he dealings between the plaintiff and the intermediary and between the intermediary and the alleged copier must involve some overlap in subject matter to permit an inference of access." (Internal citation and quotation marks omitted)). Plaintiff has done

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 22-9021-DMG (PVCx)** | Date | September 12, 2023 |
| Title | ***Changing World Films LLC, et al., v. Nathaniel Parker, et al.*** | Page | 6 of 11 |

so here. There is an overlap in subject matter between Hardwick's dealings with Parker because Hardwick went on to play a major role in the Film written and directed by Parker. These allegations go beyond a mere speculative list of potential ways Defendants could have accessed the Screenplay. *Cf. Klauber Bros., Inc. v. City Chic Collective Ltd.*, No. 22-1743-MWF (MRWx), 2022 WL 17184799, at *5 (C.D. Cal. Aug. 26, 2022) (dismissing a complaint that simply listed various conclusions regarding access).

Because Plaintiffs have adequately alleged one theory of access, the Court need not address the alternative theories. Complaint ¶¶ 81(b) and (c).

**C.      Substantial Similarity**

  **1.      Legal Principles**

Substantial similarity is determined by using the "extrinsic test" and the "intrinsic test."[4] *See Gray v. Hudson*, 28 F.4th 87, 96 (9th Cir. 2022). On a motion to dismiss, the Court considers only the extrinsic test. *See L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 852 (9th Cir. 2012), *as amended on denial of reh'g and reh'g en banc* (June 13, 2012).

The extrinsic test looks to the objective similarities of the two works, focusing on only the protectable elements of the plaintiff's expression. The Court first filters out the unprotectable elements: "primarily ideas and concepts, material in the public domain, and *scènes à faire* (stock or standard features that are commonly associated with the treatment of a given subject)." *Rentmeester v. Nike*, 883 F.3d 1111, 1118 (9th Cir. 2018), *overruled on other grounds by Skidmore*, 952 F.3d 1051. Protectable elements to be compared include plots, themes, dialogue, mood, setting, pace, characters, and the sequence of events. *Id.* at 1118–19. Although copyright law does not protect an "idea," it protects the "expression" of the idea. *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1398 (9th Cir. 1997).

Courts should be "cautious before dismissing a case for lack of substantial similarity on a motion to dismiss." *Zindel as Tr. for David Zindel Tr. v. Fox Searchlight Pictures, Inc.*, 815 F. App'x 158, 159 (9th Cir. 2020). Substantial similarity should not be decided as a matter of law on a motion to dismiss unless "the similarities between the two works are only in uncopyrightable material or are de minimis." *Id.* at 159 (quoting 3 William F. Patry, *Patry on Copyright* § 9:86.50 (2020)). The Court also considers whether additional evidence—such as expert testimony—could shed light on the issues. *See Zindel*, 815 Fed. App'x at 160; *see also Masterson v. Walt Disney*

---

[4] The intrinsic test looks to whether an ordinary, reasonable person would find that the total concept and feel of the works are substantially similar. *See Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 985 (9th Cir. 2017).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-9021-DMG (PVCx)** | Date | September 12, 2023 |
|---|---|---|---|
| Title | *Changing World Films LLC, et al., v. Nathaniel Parker, et al.* | Page | 7 of 11 |

*Company*, 821 Fed. App'x 779, 781 (9th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)) ("[T]here will be times when the court finds it plausible that the two works are substantially similar and that expert testimony could be helpful. But there will also be times where the court's 'judicial experience and common sense' shows that the claims are not plausible and that a comparison of two works creates no more than a 'mere possibility of misconduct.'"). Dismissal is not appropriate unless "[n]othing disclosed during discovery could alter the fact that the allegedly infringing works are as a matter of law not substantially similar to" the original copyrighted work." *Rentmeester*, 883 F.3d at 1123, *overruled on other grounds by Skidmore*, 952 F.3d 1051.

    **2.    Comparison of the Plots**

Beginning with the plots of the works, the Court agrees with Defendants that the basic premise—a white officer shooting an unarmed Black civilian—is "sadly, but undoubtedly, based on real-world events" and is not protectable. *Hardwell v. Parker*, No. CV 2:19-100-DMG (PVCx), 2022 WL 16894520, at *5 (C.D. Cal. Aug. 25, 2022).

But it is less clear to the Court that the core similarity—forcing an officer to undergo a publicized mock trial at gunpoint in order to achieve justice—is not protectable. The Court cannot say as a matter of law that such a sequence of events is a *scène à faire* of movies about systematic racism, police shootings, and vigilante justice. *Cf. Shame on You Prods., Inc. v. Elizabeth Banks*, 120 F. Supp. 3d 1123, 1151 (C.D. Cal. 2015) (ruling that devices extending a lead character's return to her abode, such as a lost phone, are *scènes à faire* in a film premised on a "walk of shame"); *Williams v. Crichton*, 84 F.3d 581, 589 (2d Cir. 1996) ("[E]lectrified fences, automated tours, dinosaur nurseries, and uniformed workers" were "classic *scènes à faire* that flow from the uncopyrightable concept of a dinosaur zoo"). As the Court has recently explained in a separate lawsuit brought against the makers of *American Skin*:

> Although the concept of a "show trial" of a police officer streamed on social media does not strike the Court as *scènes à faire*, the Court admittedly is not well equipped to determine whether these elements are *scènes à faire* in dramas about police brutality. . . . Here, expert testimony may assist the court in filtering protectable from unprotectable elements.

*Hardwell*, 2022 WL 16894520, at *5.[5]

---

[5] In support of their Motion, Defendants cite the *Hardwell* lawsuit brought against them by the author of a different work alleging that *American Skin* infringed another screenplay. The *Hardwell* screenplay similarly describes "a Black man whose son is killed by police during a traffic stop and decides to take justice into his own hands by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 22-9021-DMG (PVCx) | Date | September 12, 2023 |
|---|---|---|---|
| Title | *Changing World Films LLC, et al., v. Nathaniel Parker, et al.* | Page | 8 of 11 |

Nor does the protagonist acting as the prosecutor or the outcome of the trial—a guilty verdict following which the protagonist does not kill the officer—necessarily follow from the premise of holding a mock trial to bring a killer to justice. The Court agrees with Defendants that some minor similarities appear to necessarily stem from the premise of holding a staged trial of a kidnapped officer who protests his innocence—the kidnapper being armed, the officer resisting the kidnapper's authority, and the officer stating that he was "just trying to make it home." In assessing substantial similarity, the Court has set these minor details aside.

The plots nevertheless share enough details to meet the threshold of "substantial" similarity. Both works begin with a traffic stop in which the protagonist is driving and his relative, the passenger, is killed. In both, the protagonist and friends kidnap the killer in order to achieve justice through a publicized mock trial that occurs during an armed standoff with police. In both, the officer is ultimately convicted by the mock jury. Finally, in both, the protagonist ultimately allows the officer to live.

Certainly, the plots also differ in significant aspects.[6] The greatest discrepancy is the finale: in the Film, the officer admits to racial profiling and expresses remorse but to the audience's knowledge, is never formally tried or disciplined. A police sniper kills the protagonist as the protagonist and the hostages leave the building together. In the Screenplay, however, the officer

---

taking hostages and conducting a trial for the officer who killed his son." MTD at 21; *see also Hardwell*, CV 21-9100-DMG (PVCx). Defendants provide no authority (and the Court is aware of none), however, to support the notion that the creation of the same storyline twice transforms it into a *scène à faire* or otherwise makes it unprotectable. *See also Boisson v. Banian, Ltd*, 273 F.3d 262, 270 (2d Cir. 2001) ("Absent evidence of copying, an author is entitled to copyright protection for an independently produced original work despite its identical nature to a prior work, because it is independent creation, and not novelty that is required.").

[6] Among other differences, in the Film, it is the protagonist's son who is killed after the situation escalates when the son records the traffic stop, which occurs in an affluent neighborhood. In the Screenplay, twin brothers are returning from a wedding, and the protagonist's brother is killed when he reaches for what the officer believes is a firearm. In the Film, protagonist and his friends kidnap the police chief, then take the documentary team, police, and others in the police precinct hostage in order to accomplish the mock trial. This leads to a wide-ranging debate between the jurors and the police over various subjects. The Screenplay, however, involves a smaller group conducting the mock trial, for which the officer and the prosecutor are kidnapped, the officer represents himself, Romulus's friends are the bailiff and the judge, and there is no meaningful discussion between the jury (composed of mostly mannequins) and the others. It is also clear from the beginning of the mock trial in the Screenplay that the protagonist intends to kill the police officer if he is found guilty, whereas in the Film, the jury and the audience are left to speculate about the officer's fate if he is found guilty. The Film's mock trial is captured by the documentary team, whereas the Screenplay's mock trial is broadcast live, while the police search for the recording studio.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 22-9021-DMG (PVCx)** | Date | September 12, 2023 |
| Title | ***Changing World Films LLC, et al., v. Nathaniel Parker, et al.*** | Page | 9 of 11 |

is never remorseful and is humiliated and loses his job. The protagonist embarks on a new life, free of his criminal record as he assumes his brother's life.

A number of unpublished[7] Ninth Circuit opinions reversing the dismissal of cases for lack of substantial similarity support denying the motion to dismiss here. *See, e.g.*, *Zindel as Tr. for David Zindel Tr. v. Fox Searchlight Pictures, Inc.*, No. CV 18-1435 PA (KSx), 2018 WL 3601842, at *6 (C.D. Cal. July 23, 2018), *rev'd and remanded*, 815 F. App'x 158 (9th Cir. 2020); *Alfred v. Walt Disney Company*, 388 F. Supp. 3d 1174, 1184 (C.D. Cal. 2019), *rev'd and remanded*, 821 F. App'x 727 (9th Cir. 2020); *Gregorini v. Apple Inc.*, CV 20-406-JFW(JCx), 2020 WL 6128067, at *2 (C.D. Cal. May 28, 2020), *rev'd and remanded by* No. 20-55664, 2022 WL 522307, at *1 (9th Cir. Feb. 22, 2022). Review of these cases persuades the Court that Plaintiff has adequately alleged substantial similarity here, despite the differences between the plots.

Defendants argue that *Zindel* and *Alfred* are distinguishable because these cases involved highly unusual circumstances—in *Zindel*, fantastical storylines about interspecies relationships and in *Alfred*, potential issues over whether the original work (a screenplay about pirates) could be relying on tropes if the allegedly infringing works (the *Pirates of the Caribbean* films) created and/or influenced those tropes. Reply at 12. The Court is not persuaded at this stage and based on the evidence of which it may take judicial notice. The Court is not the authority on whether it is a trope of police revenge movies tackling racial injustice themes to hold a show trial of the officer or whether fleshing a screenplay out into a film requires the addition of themes and subplots not present in the screenplay. These are topics best addressed by additional evidence, not arguments in a motion to dismiss.

Nor is the Court persuaded by Defendants' cited authority. *Ricketts v. CBS Corporation*, finding no substantial similarity, involved a classic, well-trodden "rags to riches" storyline. 439 F. Supp. 3d 1199, 1212 (C.D. Cal. 2020). After setting aside *scènes à faire*—beginning the works with a shooting in the "hood"; racism and antagonism from other players toward the protagonist, a Black football player; and scenes showing the protagonist going between the "hood" and the "privileged" area—the plot similarities ended. *Id.* at 1212–13. As discussed at length above, setting aside the *scènes à faire* and other unprotectable elements, there are more significant similarities in the works at bar. Similarly, in *Newt v. Twentieth Century Fox Film Corporation*, the alleged similarities of works involving "an African American man who was involved in drug dealing and has sons pursuing a music career" were not sufficient to survive a motion to dismiss, but those similarities were less substantial than those here. *See* CV 15-02778-CBM (JPRx), 2016

---

[7] Although these cases are unpublished, they are relied upon for their persuasive value and to indicate how the Ninth Circuit applies binding authority. *See* Ninth Cir. Rule 36-3 (allowing citation of unpublished Ninth Circuit decisions after 2007).

Case 2:22-cv-09021-DMG-PVC   Document 34   Filed 09/12/23   Page 10 of 11   Page ID #:293

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 22-9021-DMG (PVCx) | Date | September 12, 2023 |
|---|---|---|---|
| Title | *Changing World Films LLC, et al., v. Nathaniel Parker, et al.* | Page | 10 of 11 |

WL 4059691, at *3–*4 (C.D. Cal. July 27, 2016) (explaining that the allegedly infringing work primarily showed family dynamics and conflict among the three sons, unlike the original works, which focused on the father's life of crime as a "pimp" running a prostitution ring).

### 3. Comparison of the Themes

As for the works' themes, themes that "arise naturally" from a premise or that are developed in very different ways are not protectable. *See Benay v. Warner Bros. Ent.*, 607 F.3d 620, 627 (9th Cir. 2010), *overruled on other grounds by Skidmore*, 952 F.3d 1051. The Court is not persuaded that the themes of retributive justice or white officers going unpunished for killing African American civilians are protectable. But both works share more specific themes, which are explored in similar ways. A primary theme of both is the justice system operating differently for Black citizens and White officers—for instance, in both, the shooting results after the traffic stop escalates because the detainees have exercised their rights. *See* Film at 48:28 (the stop escalates when Kajani refuses to stop recording); Screenplay at 41 (Remus' testimony that the officer became "upset" when Remus refused him permission to search the car). In both, the "show trial" results in a conviction (*i.e.*, some measure of justice for the officer) that is unavailable to the protagonists in the justice system. And in both, there is a theme of redemption, when an otherwise law-abiding main character turns to vigilante justice, but then ultimately allows the police officer to go free. Although Defendants focus on the inclusion of other themes in the Film, the Court finds that these similarities are substantial, for purposes of the extrinsic test.

### 4. Comparison of Characters

Only distinctive characters are protectable, not those who merely embody unprotected ideas. *Benay*, 607 F.3d at 625 (citing *Olson v. Nat'l Broadcasting Co.*, 855 F.2d 1446, 1451–53 (9th Cir. 1988)). Although both protagonists are Black men motivated to seek justice and both antagonists are White police officers with a wife and young child, these characters are otherwise not substantially similar. Romulus, the Screenplay's protagonist, is a single man in his late twenties with a criminal history; Lincoln, the Film's protagonist, is a veteran working as a janitor so that his son may attend an elite school. The police officer in the Screenplay colluded with the prosecutor and devastates his family when they learn that he is engaged in an extramarital affair. The officer does not take accountability for his actions. The police officer in the Film, on the other hand, is a loving husband and father, who apologizes to Lincoln for his actions.

The Court finds unpersuasive the allegations of substantial similarity based on other supporting characters—the mother, police captain, main character's friend, and prosecutor characters. For these characters, their traits are not protectable (for instance, a police officer trying

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 22-9021-DMG (PVCx) | Date | September 12, 2023 |
|---|---|---|---|
| Title | *Changing World Films LLC, et al., v. Nathaniel Parker, et al.* | Page | 11 of 11 |

to end a standoff without violence) or the characters are not similar. The similarities between the "main character's friend," for example, are simply that the character has "nothing to lose" and a name that begins with "D." The Court finds no substantial similarity between the works' characters.

### 5. Remaining Elements and Conclusion as to Substantial Similarity

Plaintiffs do not allege that the setting, dialogue, mood, pace, or sequence of events are substantially similar. Review of these elements does not demonstrate a striking resemblance. The setting of the Screenplay is primarily a recording studio, with some scenes in a police station. The Film occurs in various locations in Los Angeles, with the focus on the police precinct, where the trial is held. Plaintiffs do not point to any similar dialogue. The Screenplay is largely chronological, with flashbacks at the very end to reveal the ending with a twist, whereas the Film utilizes flashbacks throughout, juxtaposing scenes from Kajani's life with Lincoln's interviews and the traffic stop with the mock trial. The mood and pace of both works are tense and somber, although this would appear to be the case for any Film or Screenplay discussing this subject matter in the context of a staged trial of a police officer held against his will.

Based on review of Plaintiff's allegations, the Screenplay, and the Film, the plot and themes of the two works are similar enough to support a finding of substantial similarity between the works. Although the Court is not persuaded at this stage that the remaining elements are substantially similar, the strong similarity between the plots and themes of the works outweighs these remaining elements. The Court therefore **DENIES** the motion.

## III.
## CONCLUSION

The motion to dismiss is **DENIED**. Defendants shall file their Answer by **October 3, 2023.**

**IT IS SO ORDERED**.