Joshua I. Schiller (CA Bar No. 330653)
jischiller@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Tel: (415) 293-6800
Fax: (415) 293-6899

Benjamin Margulis (admitted *pro hac vice*)
bmargulis@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards
New York, NY 10001
Tel: (212) 446-2300
Fax: (212) 446-2350

Gina A. Rossman (admitted *pro hac vice*)
grossman@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave, NW
Washington, D.C. 20005
Tel: (202) 237-2727
Fax: (202) 237-6131

Leonard Bennett (admitted *pro hac vice*)
leonard@bblegal.net
**BENNETT & BENNETT LAW GROUP, LLC**
5000 Sunnyside Avenue, No. 101
Beltsville, MD 20705
Tel: (240) 398-3140
Fax: (240) 398-3140

*Attorneys for Plaintiffs
Changing World Films, LLC, Selton Shaw,
and Langston Shaw*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHANGING WORLD FILMS, LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> NATHANIEL PARKER, et al., <br><br> Defendants. | Case No. 22-cv-09021-DMG-PVC <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON ACCESS (PHASE I)** <br><br> Date: January 10, 2025 <br> Time: 2:00 p.m. <br> Dept.: Courtroom 8C <br> Judge: Hon. Dolly M. Gee |

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 5

PRELIMINARY FACTUAL STATEMENT ............................................................. 6

    A.    After Plaintiffs Submitted Their Screenplay to the 2017 TV One Competition, Defendants Released *American Skin*—A Film That Is Substantially Similar to Plaintiffs' Screenplay. ............................................ 6

    B.    During the Pendency of the DC Lawsuit, TV One Admitted That There Was A Connection Between TV One and Nate Parker or Omari Hardwick In Conversation With Plaintiffs' Counsel. ................................. 7

    C.    This Court Found That Plaintiffs Had Plausibly Alleged Access in Denying Defendants' Motion to Dismiss. ................................................... 8

    D.    Plaintiffs Opposed Defendants' Motion to Bifurcate Because, Among Other Reasons, Bifurcation Of Discovery Would Lead to Unnecessary Discovery Disputes. ............................................................................ 9

    E.    Defendants Obstructed Plaintiffs' Discovery Efforts Into Access. ........................ 9

LEGAL STANDARD .............................................................................................. 11

ARGUMENT ........................................................................................................... 12

    A.    Genuine Factual Issues on Access Remain to Be Tried. ........................... 12

        1.  Discovery Showed That Plaintiffs' Screenplay Was Disseminated Through The 2017 Competition. ..................................................... 13

        2.  Circumstances Show Reasonable Opportunity for Access. ........................ 13

    B.    Where, As Here, Witness Credibility Is A Core Issue, the Issue Is for the Jury ................................................................................................. 15

CONCLUSION ........................................................................................................ 15

## **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................................ 11

*Arnstein v. Porter*,
  154 F.2d 464, 471 (2d Cir. 1946) ............................................................................ 14

*Bernal v. Paradigm Talent and Literary Agency*,
  788 F. Supp. 2d. 1043 (C.D. Cal. 2010) ........................................................... 12, 13

*Cabell v. Zorro Prods. Inc.*,
  2018 WL 2183236, at *9 (N.D. Cal. May 11, 2018) ............................................... 14

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 321 (1986) ................................................................................. 10, 11

*Eastman Kodak Co. v. Image Technical Services, Inc.*,
  504 U.S. 451 (1992) ................................................................................................ 11

*Hardwell v. Parker*,
  No. 2:21-cv-9100 (C.D. Cal. Nov. 19, 2021) .......................................................... 13

*In re Barboza*,
  545 F.3d 702 (9th Cir. 2008) .................................................................................. 10

*Kamar Int'l, Inc. v. Russ Berrie & Co.*,
  657 F.2d 1059 (9th Cir. 1981) ................................................................................ 11

*Kaseberg v. Conaco, LLC*,
  260 F. Supp. 3d 1229, 1242 (S.D. Cal. 2017) ......................................................... 12

*Meta-Film Associates, Inc. v. MCA, Inc.*,
  586 F. Supp. 1346 (C.D. Cal 1984) ......................................................................... 13

*Narayan v. EGL, Inc.*,
  616 F.3d 895, 899 (9th Cir. 2010) .......................................................................... 10

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
  952 F.3d 1051 (9th Cir. 2020) ................................................................................ 11

*Thomas v. Ponder*,
  611 F.3d 1144 (9th Cir. 2010) ................................................................................ 11

*Three Boys Music Corp. v. Bolton*,
  212 F.3d 477 (9th Cir. 2000) ............................................................................ 11, 12

*Wilson v. Walt Disney Co.,*
  123 F. Supp. 3d 1172 (N.D. Cal. 2015). ............................................................... 13

**Statutes**

Fed. R. Civ. P. 56 ........................................................................................................ 11

Fed. R. Civ. P. 56(a) ................................................................................................... 10

Plaintiffs Selton Shaw, Langston Shaw, and their entertainment company Changing World Films, LLC (together "Plaintiffs") submit this memorandum in opposition to Defendants Nathaniel Parker, Tiny Giant Productions, LLC, ASP Film, LLC, (together "Parker Defendants"), TM Film Finance LLC, and Vertical Entertainment, LLC (all together "Defendants") Motion for Summary Judgment, Dkt. 69. For the reasons stated herein, Defendants' Motion should be denied.

## INTRODUCTION

Defendants' motion for summary judgment is based on a combination of conclusory statements about what Defendants would like the facts to be in this case and declarations prepared for and introduced for the first time as part of their motion for summary judgment.  However, Defendants seems to overlook that on the issue of access (which is at issue in his Phase I of the case), where evidence of direct copying is not needed, Plaintiffs need only show a plausible chain-of-events connecting Plaintiffs' submission of the Screenplay to the 2017 TV One Competition to Defendants.

Defendants' motion therefore fails for several reasons, including:  First, the basis for their motion rests, in large part, on self-serving declarations.  Second, because Defendants try to make up for their lack of document production by introducing statements crafted specifically for purposes of their own motion, the credibility of the declaration authors becomes an issue that a finder of fact must determine.  Third, even according to the declarations and sworn statements that Defendants introduce for the first time as part of their motion for summary judgment, it is apparent that Plaintiffs' screenplay was disseminated as part of the TV One competition—how broadly and to whom (e.g., whether only to judges or not) is a question that needs to be explored by a finder of fact and does not lend itself to summary disposition.

Given that open questions remain regarding the issue of access in this case, summary judgment is simply not appropriate, and this Court should deny Defendants' motion.

## PRELIMINARY FACTUAL STATEMENT

### A. After Plaintiffs Submitted Their Screenplay to the 2017 TV One Competition, Defendants Released *American Skin*—A Film That Is Substantially Similar to Plaintiffs' Screenplay.

Plaintiffs Langston and Selton Shaw are independent filmmakers. They write, produce, and direct films through their entertainment company, Plaintiff Changing World Films, LLC. In 2017, Plaintiffs wrote a screenplay titled *A Routine Stop*. Plaintiffs' original screenplay tells the story of a Black man that takes justice into his own hands by kidnapping a white police office and putting the officer through a show trial following the death of the man's relative during a routine traffic stop. Plaintiffs wrote this screenplay to address police violence against Black men and women and the country's systemic indifference to it.

On February 15, 2017, Plaintiffs submitted their screenplay for *A Routine Stop* to the 2017 TV One Screenplay Competition with the goal of having the screenplay produced into a feature film. The TV One Screenplay Competition is run by TV One, a television network, and is supported by the American Black Film Festival ("ABFF"). The competition is generally judged by a team of industry professionals.

Ultimately, TV One did not select *A Routine Stop* as a finalist for its 2017 competition. Plaintiffs continued to believe that they could make *A Routine Stop* into a film, though they focused on developing other new and original projects. Then, in 2019, they learned about Defendants' new film, *American Skin*.

Like Plaintiffs' work, *American Skin* focuses on police violence against Black men and women and the country's systemic indifference to it. *American Skin* begins with the death of the main character's relative by a white police officer after a routine traffic stop. The main character, after learning that a grand jury decided not to indict

the officer for murder, then holds the officer hostage and puts him through a show trial at gun point. The trial concludes with a dramatic confession from the officer, and both works ultimately end in tragedy, with either the main character's arrest (*A Routine Stop*) or death (*American Skin*) following a last-minute act of mercy. In addition to the shared plot sequence, *A Routine Stop* and *American Skin* also share a similar cast and logline.

### B. During the Pendency of the DC Lawsuit, TV One Admitted That There Was A Connection Between TV One and Nate Parker or Omari Hardwick In Conversation With Plaintiffs' Counsel.

Plaintiffs originally commenced this action in the United States District Court for the District of Columbia alleging that Defendants unlawfully copied, reproduced, published, copyrighted, and distributed Plaintiffs' screenplay for *A Routine Stop* and brought claims for direct, contributory, and vicarious copyright infringement. *Changing the World Films, LLC v. Parker*, No. 1:21-cv-02787 (D.D.C. Oct. 20, 2021) (the "DC Lawsuit"), ECF No. 1.

While the DC Lawsuit was pending, Plaintiffs' counsel reached out to TV One's Director of Legal and Business Affairs, Corinne Kirkland-Mercedes. SUF 87. Plaintiffs' counsel explained the nature of this case and asked Ms. Kirkland-Mercedes for information about the 2017 Competition in a March 24, 2022 phone call. SUF 88. Ms. Kirkland-Mercedes stated that TV One's records relating to the 2017 Competition were disorganized, and that the 2017 Competition pre-dated her tenure, so she needed time to discuss Plaintiffs' discovery requests with her team. SUF 89-90.

Plaintiffs' counsel followed up with Ms. Kirkland-Mercedes on March 29, 2022. SUF 91. During that second phone call, Ms. Kirkland-Mercedes represented that she had met with her team, and she believed there was a connection between TV One and Nate Parker or Omari Hardwick. SUF 91-92. Ms. Kirkland-Mercedes also stated that as part of the 2017 Competition, she believed portions of finalist screenplays were "acted" or "read" out loud. SUF 92.

A few weeks later, Plaintiffs' counsel called and left a voicemail for Ms. Kirkland-Mercedes to continue their conversation. SUF 94. Ms. Kirkland-Mercedes responded via email on April 28, 2022, stating that TV One had checked its "contract files" and could not confirm Plaintiffs' allegations—a statement which did not surprise Plaintiffs, since Ms. Kirkland-Mercedes had previously characterized TV One's records as disorganized. Ms. Kirkland-Mercedes also stated that TV One's employees did not have a "recollection" of having shared Plaintiffs' Screenplay with Mr. Parker or Mr. Hardwick—also not unexpected, given the passage of time between the 2017 Competition and Ms. Kirkland-Mercedes' informal inquiry (five years later). Notably, Ms. Kirkland-Mercedes did not deny the plausibility of Plaintiffs' claims, or correct her earlier statement regarding Mr. Parker and Mr. Hardwick's potential involvement with TV One.

Plaintiffs subsequently filed an amended complaint, and Defendants moved to dismiss the DC Lawsuit. DC Lawsuit, ECF Nos. 39, 41. The court did not reach the merits of Plaintiffs' claims. Instead, it dismissed the case without prejudice for lack of personal jurisdiction. DC Lawsuit, ECF. No. 48.

### C. This Court Found That Plaintiffs Had Plausibly Alleged Access in Denying Defendants' Motion to Dismiss.

This lawsuit followed on December 13, 2022. Dkt. 1 ("Compl."). The complaint alleges that Defendants accessed Plaintiffs' screenplay through a chain of events based on Defendants' connections to TV One and ABFF. (Compl. ¶ 81.) Specifically, Plaintiffs allege that "Mr. Hardwick, star of *American Skin* and friend to Mr. Parker, was involved in the 2017 TV One Screenplay Competition and either provided or acted out the screenplay Plaintiffs submitted for *A Routine Stop* to Defendant Parker." (*Id.*)

Defendants filed a motion to dismiss on January 30, 2023. Dkt. 20. Despite having an opportunity to do so, Defendants did not offer any testimony to contradict Plaintiffs' theory of access as is typical in these cases. For example, Defendant Spike Lee in the DC Lawsuit submitted a declaration stating that he was not involved in the

2017 Competition and had not read Plaintiffs' screenplay submission. DC Lawsuit, ECF No. 23-1 ¶ 15. Meanwhile, Defendant Parker also submitted a declaration in the DC Lawsuit, but he remained pointedly silent about the alleged infringement. *See* DC Lawsuit, ECF No. 41-2.

The Court denied the motion to dismiss on September 12, 2023. Dkt. 34. Relevant to this motion, the Court found that Plaintiffs had plausibly alleged a chain of events between Plaintiffs' Screenplay and Defendants' access to the Screenplay. *Id.* at 5-6. It stated that "[t]here is an overlap in subject matter between Hardwick's dealings with Parker because Hardwick went on to play a major role in the Film written and directed by Parker. These allegations go beyond a mere speculative list of potential ways Defendants could have accessed the Screenplay." *Id.* (citation omitted).

### D. Plaintiffs Opposed Defendants' Motion to Bifurcate Because, Among Other Reasons, Bifurcation Of Discovery Would Lead to Unnecessary Discovery Disputes.

After losing their motion to dismiss, Defendants attempted a new delay tactic through their motion to bifurcate. Dkt. 39. Plaintiffs opposed the motion on the grounds that bifurcation was unduly burdensome and a waste of judicial resources. Dkt. 42. Plaintiffs' opposition also explained why the issue of access, as an element of Plaintiffs' copyright infringement claim, was not well-suited to bifurcation. *Id.* at 12. Plaintiffs predicted (correctly, as it turned out) that if the motion was granted, the parties would argue over what requests go to issues of access or substantial similarity. *Id.* at 13. The Court granted Defendants' motion over Plaintiffs' objection. Dkt. 54.

### E. Defendants Obstructed Plaintiffs' Discovery Efforts Into Access.

Rather than cooperate with Plaintiffs on discovery, Defendants acted to thwart Plaintiffs at every step in the process. First, Defendants unilaterally withheld their production for over six months—only for Plaintiffs to discover, on June 28, 2024, that Defendants were planning to produce *seven* total documents. SUF 95-97. As Plaintiffs explained to Defendants, those *seven* documents could not represent the total universe

of responsive documents. Plaintiffs' First Requests for Production defined "document" to "have the broadest meaning possible," to include "text messages." SUF 97. Notably, Defendants did not produce a single text message to or from Nate Parker concerning *American Skin*. SUF 97. This was a glaring omission, since it is publicly known from the Hardwell lawsuit that Mr. Parker communicates via text to discuss the development of his screenplay projects—specifically in the context of *American Skin*.

Second, Defendants intentionally delayed production of third-party discovery, which included documents covered by Plaintiffs' First Requests for Production. Plaintiffs discovered on August 27, 2024, through a phone call with TV One's representative, that TV One had made an initial production of documents to Defendants some weeks before. SUF 99. Defendants never informed Plaintiffs of this production despite Plaintiffs' previous requests that Defendants produce whatever TV One had provided to them. SUF 100. Plaintiffs reiterated their request for production of the TV One documents the very next day; Defendants withheld TV One's production for another two weeks.  SUF 101-102.

Third, Defendants refused to run additional search terms to supplement their deficient product. Plaintiffs reiterated their request in an August 28, 2024 email that Defendants produce a privilege log and explain their process for document production. SUF 108.  Defendants, however, would not commit to promptly supplementing their deficient production.  SUF 104. By this point, Defendants' repeated delay was impacting the discovery schedule and harming Plaintiffs' ability to review documents and formulate their deposition strategy. Plaintiffs were therefore required to seek court intervention before Magistrate Judge Castillo on September 9, 2024.  SUF 106.

Defendants subsequently agreed to consider running additional search terms and manually reviewing those documents for the supplementation of their production. SUF 106. Defendants withdrew their offer one week later. SUF 106. They claimed that Plaintiffs had "wasted a week by delaying in making a proposal," even though Plaintiffs were still in the process of formulating their response. SUF 106. Defendants

have not supplemented their production with any text messages or other communications with Mr. Hardwick to date.

Lastly, Defendants have repeatedly claimed that information relating to Nate Parker's creation and development of American Skin is outside the scope of Phase I discovery. SUF 107. Defendants maintained the position that because such information was related to Defendants' defense of independent creation, it was not related to access and thus was not the subject of Phase I Discovery. SUF 107. However, as Plaintiffs pointed out to Defendants, information on how Mr. Parker's screenplay was created and/or how his creative process was influenced goes directly towards the issue of access (or the lack thereof). SUF 107. Defendants should not be allowed to invoke an affirmative defense in order to block all relevant inquiries into access. After several meet-and-confers, Defendants were unwilling to move off their position. SUF 107. It became clear to Plaintiffs that a deposition of Mr. Parker would not yield fulsome or honest testimony; for that reason, Plaintiffs opted not to pursue Mr. Parker's deposition. SUF 108.

## **LEGAL STANDARD**

Summary judgment is appropriate only if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Narayan v. EGL, Inc.*, 616 F.3d 895, 899 (9th Cir. 2010) (quotation omitted). The non-movant's "version of any disputed issue of fact is thus presumed correct." *Thomas v. Ponder*, 611 F.3d 1144, 1149 (9th Cir. 2010) (quoting *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 456 (1992)). Moreover, the Court "generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (quotation omitted).

The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 323. If, and only if, the movant meets its initial burden, the non-movant must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## ARGUMENT

### A. Genuine Factual Issues on Access Remain to Be Tried.

To show access, a plaintiff must allege that the infringer had a "reasonable possibility" of viewing the protected work. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020).

Reasonable access must be "more than a bare possibility." *Id.* (quotation omitted). A plaintiff can show that reasonable possibility if "a particular chain of events is established between the plaintiff's work and the defendant's access to that work . . . ." *Id.* "[E]vidence that a third party with whom both the plaintiff and defendant were dealing had possession of plaintiff's work is sufficient to establish access by the defendant." *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 657 F.2d 1059, 1062 (9th Cir. 1981) (quotation omitted). Because "the act of copying is rarely witnessed, copying is ordinarily established indirectly." *Kamar Int'l*, 657 F.2d at 1062. Here, Plaintiffs have alleged a plausible chain of events based on Plaintiffs' submission of their screenplay to TV One and connection through the ABFF to Omari Hardwick, with whom Mr. Parker worked on *American Skin*.

As the court held in *Kaseberg v. Conaco, LLC*:

> Ultimately, the issue of access is tied closely to the facts, *see Three Boys Music Corp.*, 212. F.3d at 482, and the caselaw supports these unique facts, combined with the others listed above, as warranting further development at trial. *See Bernal*, 788 F.Supp.2d at 1056 ("Instead, to avoid summary judgment, a plaintiff must show that he

submitted his work to an intermediary who is in a position to transmit the plaintiff's work to the creators of the infringing work." . . .).

*Kaseberg v. Conaco, LLC*, 260 F. Supp. 3d 1229, 1242 (S.D. Cal. 2017) (citation omitted).

### 1. Discovery Showed That Plaintiffs' Screenplay Was Disseminated Through The 2017 Competition.

Here, the Motion and third-party discovery provide material evidence on the issue of access that, at a minimum, creates a triable issue. Dkt. 69 ("Defs.' Br.") at 4. Plaintiffs submitted their Screenplay to the 2017 Competition, and TV One confirmed that it received Plaintiffs' Screenplay, and also disseminated Plaintiffs' Screenplay to be read and judged. *Id.*

### 2. Circumstances Show Reasonable Opportunity for Access.

Defendants have submitted a long series of declarations denying access, but these declarations do not negate the circumstances under which Defendants had the opportunity to receive Plaintiffs' Screenplay. One of the stars of Defendants' Film, Omari Hardwick (SUF 26), has previously been involved in competitions for the ABFF, and he was in fact invited by the ABFF to attend the TV One Awards Presentation at the June 2017 ABFF as a guest. The ABFF was in turn sponsored by TV One, and even hosted a forum for the 2017 Competition finalists to have their scripts read before the ABFF audience and allowed TV One to present an award at the ABFF final ceremony. Thus, the fact that Plaintiffs submitted their Screenplay to the 2017 Competition, and the fact that the 2017 Competition had ties through the ABFF to Mr. Hardwick, with whom Mr. Parker worked on *American Skin*, establishes a reasonable opportunity for access.

In support of their Motion, Defendants have submitted a declaration from TV One's representative that does not actually contradict Plaintiffs' evidence. TV One's representative Jody Drewer claims that a search of TV One's documentary records "yielded no evidence that I have reviewed supporting a showing that any screenplay

submitted to the 2017 Competition—including the Screenplay—had been shared with any unauthorized third party, including Mr. Hardwick." Drewer Decl. ¶ 11. However, TV One had previously represented to Plaintiffs that their records relating to the 2017 Competition were disorganized. SUF 89. It is entirely plausible, then, that evidence concerning Mr. Hardwick or any other connection to Defendants was lost or not discovered due to the disorganized state of TV One's records for the 2017 Competition.

Defendants' cited case law is also inapposite. They rely on *Meta–Film Associates, Inc. v. MCA, Inc.*, to argue that their connection to the Screenplay is tenuous (at 9), but in that case, the third-party intermediary "had no connection with the Treatment" for the allegedly infringing film. 586 F. Supp. 1346, 1355 (C.D. Cal 1984). It was a similar situation in *Bernal v. Paradigm Talent and Literary Agency*, 788 F. Supp. 2d. 1043 (C.D. Cal. 2010). The third-party intermediary there "never worked together on [the infringing work] or anything else" with the alleged infringer's agent. *Id.* at 1058. In contrast, it is undisputed that the third-party intermediary here (Omari Hardwick) starred in Defendants' Film. The court's decisions in *Meta-Film* and *Bernal* are therefore easily distinguishable, because there is a direct connection between Mr. Hardwick and the infringing work.

Unsurprisingly, Defendants are unwilling to concede that they had access, i.e., a reasonable opportunity to view, Plaintiffs' Screenplay. But as held in *Wilson v. Walt Disney Co.*, the Court is not "permitted to credit the [defendant's] witnesses' denials that they'd ever seen [the infringing work]." 123 F. Supp. 3d 1172, 1173–74 (N.D. Cal. 2015). Accordingly, denials of access submitted by Defendants' witnesses should be disregarded.

### B. Where, As Here, Witness Credibility Is A Core Issue, the Issue Is for the Jury.

Summary judgment is also inappropriate where "credibility, including that of the defendant, is crucial" to determining the issue of access. *Arnstein v. Porter*, 154 F.2d 464, 471 (2d Cir. 1946). Mr. Parker denies having stolen Plaintiffs' Screenplay, but this is not the first time he has been accused of copying another creator's work—indeed, relating to the same film, *American Skin*. *See Hardwell v. Parker*, No. 2:21-cv-9100 (C.D. Cal. Nov. 19, 2021) (the "Hardwell Lawsuit"). In the *Hardwell* lawsuit, Mr. Parker fought similar allegations that he had copied from an aspiring screenwriter; the parties only settled after Mr. Parker lost on his motion to dismiss. Defendants would not disclose the terms of the settlement and threatened to fight any inquiry into the *Hardwell* settlement. Their refusal to produce relevant discovery suggests the terms were unfavorable.

Therefore, the circumstances surrounding the *Hardwell* Lawsuit give this Court additional reason to question Mr. Parker's credibility. It is a question, however, for the jury, and not one for the Court to resolve on summary judgment. *See Cabell v. Zorro Prods. Inc.*, 2018 WL 2183236, at *9 (N.D. Cal. May 11, 2018) (finding a triable issue of fact even though the alleged infringer testified that she worked independently).

### CONCLUSION

For all of the foregoing reasons, Plaintiffs request that this Court deny Defendants' motion for summary judgment on access (Phase I).

DATE: November 26, 2024                    Respectfully submitted,

*/s/ Joshua I. Schiller*
Joshua I. Schiller (CA Bar No. 330653)
jischiller@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Tel: (415) 293-6800
Fax: (415) 293-6899

Benjamin Margulis (*admitted pro hac vice*)
bmargulis@bsfllp.com
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Tel: (212) 446-2300
Fax: (212) 446-2350

Gina A. Rossman (*admitted pro hac vice*)
grossman@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, D.C. 20005
Tel: (202) 237-2727
Fax: (202) 237-6131

Leonard Bennett (*admitted pro hac vice*)
leonard@bblegal.net
BENNETT & BENNETT LAW GROUP, LLC
5000 Sunnyside Avenue, No. 101
Beltsville, MD 20705
Tel: (240) 398-3140
Fax: (240) 398-3140

*Attorneys for Plaintiffs*
*Changing World Films, LLC, Selton Shaw, and Langston Shaw*