# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHANGING WORLD FILMS, LLC, et al., | Case No. CV 22-9021-DMG (PVCx) |
| Plaintiffs, | **ORDER RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [69]** |
| v. | |
| NATHANIEL PARKER, et al., | |
| Defendants. | |

Before the Court is Defendants' motion for summary judgment. [Doc. # 69 ("MSJ").] The motion is fully briefed. [Doc. ## 71 ("Opp."), 75 ("Reply").] The Court held a hearing on the motion on January 10, 2025. Having carefully considered the parties' arguments, the Court **GRANTS** the MSJ for the reasons set forth below.

## I.
## PROCEDURAL BACKGROUND

On December 13, 2022, Plaintiffs Selton and Langston Shaw, and their film company, Changing World Films, LLC, filed a Complaint against Defendants

-1-

Nathaniel Parker, TM Film Finance, LLC, Tiny Giant Productions, LLC, Vertical Entertainment, LLC, Shelton Jackson Lee,[1] and ASP Films, LLC, asserting claims for (1) direct copyright infringement, (2) contributory copyright infringement, and (3) vicarious copyright infringement. [Doc. # 1 ("Compl.").] Defendants filed a motion to dismiss Plaintiffs' Complaint on January 3, 2023, which the Court denied. [Doc. ## 20 ("MTD"), 34 ("MTD Ord.").] Defendants then moved to bifurcate discovery into two phases: one phase solely on the issue of access, and the second, if needed, on all other issues. [Doc. # 39 ("MTB").] The Court granted the MTB and bifurcated the case into two phases, the first of which includes the current proceeding. [Doc. # 54 ("MTB Ord.").]

As part of its MTB Order, the Court granted Defendants leave to file a motion for summary judgment limited to the issue of access, without prejudice to subsequent motions for summary judgment, should any be necessary. MTB Ord. at 2. Defendants' Phase I MSJ is now before the Court.

## II.
## FACTUAL BACKGROUND[2]

### A.  Evidentiary Objections

The Court has reviewed Defendants' evidentiary objections.[3] [Doc. ## 76, 77.] To the extent it does not address any of them, it is because the Court did not rely on the objected-to evidence in reaching its ruling. Any objections to such evidence are

---

[1] Lee was dismissed from the action on February 6, 2023. [Doc. # 22.]

[2] The facts in this section are uncontroverted, unless otherwise stated. Many of the parties' purportedly disputed facts are not in fact controverted by evidence, and the Court therefore cites to them as uncontroverted facts. Facts are drawn from Defendant's Statement of Undisputed Facts [Doc. # 69-1 ("SUF")], as set forth with Plaintiff's Statement of Genuine Disputes [Doc. # 71-1 ("SGD")], and Defendant's responses thereto [Doc. # 75-2 ("RGD")]. The Court has reviewed the entire record but discusses only the uncontroverted material facts that affect its analysis.

[3] Plaintiffs did not submit any evidentiary objections.

**OVERRULED as moot**.  Otherwise, the Court will address any pertinent evidentiary objections throughout this Order.

**B.    The 2017 Competition**

The Court detailed the factual background of this action, including the premises of the *A Routine Stop* Screenplay ("the Screenplay") and the *American Skin* Film ("the Film"), in its MTD Order, which it incorporates by reference here.  The Court will recap only an abbreviated version of the relevant facts in this Order and set forth the additional uncontroverted facts presented in the MSJ.

Plaintiffs Selton and Langston Shaw are brothers, independent filmmakers, business partners, and co-owners of Changing the World Films, LLC.[4]  SUF ¶¶ 1, 2.  Selton Shaw wrote the Screenplay for *A Routine Stop* and submitted the Screenplay for consideration in the 2017 TV One Screenplay Competition ("the Competition" or "2017 Competition").  *Id.* ¶¶ 4, 6.  TV One contracted with S.L. Duffy to assist with the 2017 Competition as its project manager.  *Id.* ¶ 39.  As part of her role as the project manager, Duffy managed the intake of the screenplays to the Competition and assigned each of the screenplays to one of 15 "readers."  *Id.* ¶ 40.  Once assigned a screenplay, the reader would read, evaluate, and score it.  *Id.* ¶ 45.  Ron Moskovitz was the assigned reader for Plaintiffs' Screenplay.  *Id.* ¶ 50.

Like the other readers for the Competition, Moskovitz signed a non-disclosure agreement as part of his contract with TV One.  *Id.* ¶ 42.  After reviewing, Moskovitz recommended that TV One "pass" on the Screenplay because, among other things, "the execution [was] amateurish and [didn't] exploit the concept well."  *Id.* ¶ 54; Declaration of Ron Moskovitz ("Moskovitz Decl.") ¶ 9 [Doc. # 69-5].  After he submitted his feedback, Moskovitz deleted the Screenplay from his computer.  SUF ¶ 55.  The Screenplay did not advance to the next round of the Competition.  *Id.* ¶ 60.  Other than

---

[4] The parties' filings refer to the Shaws' film company as both "Changing World Films, LLC" and "Changing the World Films, LLC."  For the purposes of this Order, the names are used interchangeably.

Moskovitz, Duffy did not share the Screenplay with anyone affiliated with the 2017 Competition. Declaration of S.L. Duffy ("Duffy Decl.") ¶ 13 [Doc. # 69-4].

The 10 screenplays that proceeded to the second round of the Competition were read by another set of readers, and the three screenplays that made it to the third and final round were performed by professional actors at a table read event in front of a live audience. *Id.* ¶¶ 45, 66. The grand prize winner of the Competition was announced at the American Black Film Festival ("ABFF") Filmmaker Ceremony held on June 18, 2017. *Id.* ¶ 70. Omari Hardwick—an actor and the alleged "intermediary" for Nate Parker's alleged copyright infringement—was invited to attend the awards ceremony (where the Screenplay was not featured), but he did not serve as a reader in any of the three rounds for the 2017 Competition, never received a copy of the Screenplay, and never saw any portion of the Screenplay acted out by others. *Id.* ¶¶ 71, 75–77; Declaration of Omari Hardwick ("Hardwick Decl.") ¶¶ 4–6.

## III.
## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific

facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (*en banc*) ("Rule 56 requires the parties to set out facts they will be able to prove at trial."). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "Rather, it draws all inferences in the light most favorable to the nonmoving party." *Id.*

## IV.
## DISCUSSION

**A.    Direct Copyright Infringement**

The Copyright Act vests a copyright owner with the exclusive right to reproduce, distribute copies of, and prepare derivative works based on the copyrighted work. 17 U.S.C. § 106. To prevail on a claim of copyright infringement, a plaintiff must show (1) ownership of a valid copyright and (2) infringement—defendant's copying of the protected elements of plaintiff's work. *See Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1065 (9th Cir. 2020). "Proof of copyright infringement is often highly circumstantial[.]" *Id.* Where there is no direct evidence of copying, a copyright plaintiff must make a fact-based showing that defendant had "access" to the plaintiff's work and that the two works are "substantially similar." *Id.*

"Proof of access requires an opportunity to view or to copy plaintiff's work . . . often described as providing a 'reasonable opportunity' or 'reasonable possibility' of viewing the plaintiff's work." *Id.* at 482. Reasonable access requires "more than a bare possibility" of access and is proven by "a particular chain of events" established "between the plaintiff's work and the defendant's access to that work[.]" *Id.* This includes possession of plaintiff's work by a third party with whom both the plaintiff and defendant were dealing. *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 657 F.2d 1059,

1062 (9th Cir. 1981). If a plaintiff's theory of access is based on a third party, as is the case here, there must be a "sufficient nexus between the individual who possesses knowledge of a plaintiff's work and the creator of the allegedly infringing work." *See Bernal v. Paradigm Talent and Literary Agency*, 788 F. Supp. 2d 1043, 1056–57 (C.D. Cal. 2010) (quoting *Meta-Film Assocs., Inc. v. MCA, Inc.*, 586 F. Supp. 1346, 1356–59 (C.D. Cal. 1984)); *see also Loomis v. Cornish*, 836 F.3d 991, 995–98 (9th Cir. 2016).

At the motion to dismiss stage, Plaintiffs' theory of access was that Defendant Parker obtained the Screenplay from Omari Hardwick, who was involved in the TV One Screenplay Competition, an actor in the Film, and a friend of Parker. MTD Ord. at 4. It has now become clear, however, that although Hardwick had some involvement with ABFF in previous years, Hardwick was *not* involved in the 2017 Competition in any capacity. Hardwick Decl. ¶ 8. Thus, Plaintiffs have shifted to the theory that Parker obtained access to the Screenplay from Hardwick, who acquired the Screenplay via his "ties" to the 2017 Competition through his previous involvement with the ABFF. Opp. at 13. Defendants argue that this theory is too attenuated to create a genuine issue of material fact as to whether Hardwick, and therefore Parker, had any ability or opportunity to access the Screenplay. The Court agrees.

Defendants have submitted uncontroverted evidence that only two individuals accessed the Screenplay as part of the 2017 Competition: S.L. Duffy, the Competition's project manager, and Ron Moskovitz, the reader assigned to score the Screenplay. SUF ¶¶ 47, 50; Duffy Decl. ¶ 13. Plaintiffs' only theory of access is through Hardwick, not through either Duffy or Moskovitz. In an attempt to overcome Defendants' evidence, Plaintiffs rely on two statements made by Corinne Kirkland-Mercedes, TV One's Director of Legal and Business Affairs—that the 2017 Competition was "disorganized" and that she "believed there was a connection between TV One and Nate Parker or Omari Hardwick." *See* Declaration of Joshua I. Schiller ("Schiller Decl.") ¶¶ 3,4. Essentially, Plaintiffs suggest that Parker and/or Hardwick's involvement with the 2017 Competition was not recorded properly. Kirkland-

Mercedes' statements, which are presented in Plaintiffs' counsel's declaration, are inadmissible hearsay and lack personal knowledge.[5] But even if they somehow could be rendered admissible at trial through other witnesses, they present no more than a "bare possibility" of access, which is insufficient to survive summary judgment. *See Meta-Film*, 586 F. Supp. at 1357 (concluding that there was no access where the alleged intermediary was not the one reviewing the copyrighted work); *see also Loomis*, 836 F.3d at 997 (rejecting plaintiff's access argument because it relied on inadmissible hearsay testimony).

Plaintiffs further contend that summary judgment is inappropriate because "[Parker's] credibility is a core issue" for a jury to decide. Opp. at 15. This argument also falls short. Plaintiffs question Parker's credibility because he was previously sued for copyright infringement in 2021 and "[Defendants'] refusal to produce relevant discovery [about the 2021 lawsuit] suggests the terms were unfavorable [to Parker]." *See Hardwell v. Parker*, No. CV 21-9100-DMG (PVCx) (C.D. Cal. Nov. 19, 2021). This argument is speculative at best and beside the point regardless, as Defendants' access evidence does not rely on Parker's credibility.

Lastly, Plaintiffs suggest that the Court should outright "disregard" denials of access submitted by Defendants' witnesses based upon another court's decision in *Wilson v. Walt Disney Co.* Opp. at 14; *see* 123 F. Supp. 1172, 1173–74 (N.D. Cal. 2015). That case is easily distinguishable, however, because unlike here, there was a clear chain of events that created a "reasonable possibility" that the alleged infringers had an opportunity to view the copyrighted film. *See id.* at 1173 (explaining that the film had been shown publicly at a film festival that was known to have been attended by employees of the alleged infringer). This stands in stark contrast to the facts here, where: (1) Plaintiffs' Screenplay did not make it to the round of the Competition that

---

[5] Defendants' hearsay and personal knowledge objections to the statements made by Kirkland-Mercedes are **SUSTAINED**. A court may consider only admissible evidence on an MSJ. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2022).

involved the live table read, and (2) Defendants have provided ample evidence that Hardwick had no involvement in the 2017 Competition, and Plaintiffs have offered no admissible evidence to refute that fact. In sum, nothing in the evidentiary record shows the requisite nexus between Hardwick and the Screenplay "except for [Plaintiffs'] own speculation." *See Loomis*, 836 F.3d at 997.

Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiffs' claim for direct copyright infringement.

### B.     Contributory and Vicarious Copyright Infringement

Because the Court has found no triable issue of direct infringement here, there can be no viable claim of vicarious or contributory copyright infringement. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930, 125 S. Ct. 2764, 2776, 162 L. Ed. 2d 781 (2005); *see also Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007) ("Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party.") (internal citation and quotation marks omitted). The Court thus **GRANTS** Defendants' motion for summary judgment on Plaintiffs' claims for contributory and vicarious copyright infringement.

### V.
### CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendants' motion for summary judgment in its entirety. This outcome is dispositive and eliminates the need for Phase II proceedings. All remaining dates and deadlines are **VACATED**. A separate judgment shall issue.

**IT IS SO ORDERED.**

DATED:  January 10, 2025

_____
DOLLY M. GEE
Chief United States District Judge