NICOLAS A. JAMPOL (State Bar No. 244867)
  nicolasjampol@dwt.com
SAMANTHA LACHMAN (State Bar No. 331969)
  samlachman@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California  90017-2566
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

JOHN D. FREED (State Bar No. 261518)
  jakefreed@dwt.com
SARAH E. BURNS (State Bar No. 324446)
  sarahburns@dwt.com
DAVIS WRIGHT TREMAINE LLP
50 California Street, Suite 2300
San Francisco, California  94111
Telephone:  (415) 276-6500
Fax:  (415) 276-6599

Attorneys for Defendants
NATHANIEL PARKER, TINY GIANT
PRODUCTIONS, LLC, ASP FILM, LLC,
TM FILM FINANCE, LLC, AND
VERTICAL ENTERTAINMENT, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHANGING WORLD FILMS LLC, SELTON SHAW, and LANGSTON SHAW, <br><br> Plaintiffs, <br><br> vs. <br><br> NATHANIEL PARKER *a/k/a* NATE PARKER, TM FILM FINANCE LLC *d/b/a* TM FILMS, TINY GIANT PRODUCTIONS, LLC *d/b/a* TINY GIANT ENTERTAINMENT, VERTICAL ENTERTAINMENT, LLC, SHELTON JACKSON LEE *a/k/a* SPIKE LEE, and ASP FILM, LLC, <br><br> Defendants. | Case No. 2:22-cv-09021-DMG-PVC <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES** <br><br> Date:   February 21, 2025 <br> Time:   9:30 a.m. <br> Dept.:  Courtroom 8C |

**TO THE COURT, PLAINTIFFS, AND ALL PARTIES:**

PLEASE TAKE NOTICE that on February 21, 2025, at 9:30 a.m. or as soon as may be heard in Courtroom 8C of the United States District Court for the Central District of California, 350 West 1st Street, Los Angeles, CA, 90012, defendants Nathaniel Parker, Tiny Giant Productions, LLC, ASP Film, LLC, TM Film Finance, LLC, and Vertical Entertainment, LLC (collectively, "Defendants") will and hereby does move for attorneys' fees in connection with their successful motion for summary judgment on the copyright claims asserted by Plaintiffs Changing World Films LLC, Selton Shaw, and Langston Shaw (together, "Plaintiffs"). Specifically, Defendants seek $**327,369.00** in attorneys' fees and **$14,056** in costs in connection with their successful motion for summary judgment and with this Motion, plus attorneys' fees (in an amount to be established) incurred in additional time preparing this Motion, the reply brief and preparing for and attending the hearing on this Motion.[1]

This Motion is made pursuant to 17 U.S.C. § 505, which provides that the Court may award reasonable attorneys' fees to a prevailing copyright defendant. All of the factors courts consider in evaluating copyright fee awards support Defendants' request: (a) Defendants prevailed completely on Plaintiffs' copyright claims; (b) Plaintiffs' copyright claims were objectively unreasonable; (c) Plaintiffs lacked a legitimate motive under copyright law for their action against Defendants; and (d) a fee award would further the Copyright Act's goals and deter meritless litigation. Moreover, the amount of Defendants' request is reasonable, both in terms of defense counsel's rates and the hours expended.

This Motion is based on this Notice, the attached Memorandum of Law, the concurrently filed Declaration of Jake Freed, along with Exhibits A and B, any matters of which this Court may take judicial notice, all pleadings, files, and records

---

[1] Defendants will submit evidence regarding these additional fees with their reply brief.

in this action, and any such other argument as may be presented to the Court at the time of the hearing on this Motion.

This Motion is made pursuant to L.R. 7-3, as set forth in the Declaration of Jake Freed ("Freed Decl."). *See* Freed Decl. ¶¶ 2-3, Ex. A.

DATED: January 24, 2025

DAVIS WRIGHT TREMAINE LLP
NICOLAS A. JAMPOL
JOHN D. FREED
SARAH E. BURNS
SAMANTHA LACHMAN

By:  /s/ *John D. Freed*
John D. Freed

Attorneys for Defendants
NATHANIEL PARKER, TINY GIANT
PRODUCTIONS, LLC, ASP FILM, LLC,
TM FILM FINANCE, LLC, AND
VERTICAL ENTERTAINMENT, LLC

ii

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................. 1

II.   PROCEDURAL BACKGROUND ................................................ 2

III.  DEFENDANTS ARE ENTITLED TO RECOVER THEIR FEES
      UNDER THE COPYRIGHT ACT ............................................. 3

      A.    Defendants Achieved Complete Success In This Litigation ............... 4

      B.    Plaintiffs' Copyright Claims Were Objectively Unreasonable ........... 5

      C.    Plaintiffs' Action Lacked a Legitimate Motivation ........................... 7

      D.    A Fee Award Is Appropriate To Advance The Copyright Act's
            Goals .............................................................................. 9

IV.   DEFENDANTS' REQUESTED FEES ARE REASONABLE .................. 10

      A.    Defendants' Counsel's Billing Rates Are Reasonable ..................... 11

      B.    The Hours Expended by Defendants' Counsel Are Reasonable ........ 13

V.    CONCLUSION ................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Baker v. Urban Outfitters*,
    431 F. Supp. 2d 351 (S.D.N.Y. 2006) ............................................... 10

*Blum v. Stenson*,
    465 U.S. 886 (1984) ........................................................................... 12

*Bridgeport Music, Inc. v. WB Music Corp.*,
    520 F.3d 588 (6th Cir. 2008) ............................................................... 7

*Bryant v. Media Right Prods., Inc.*,
    603 F.3d 135 (2d Cir. 2010) ................................................................. 8

*Building a Better Redondo, Inc. v. City of Redondo Beach*,
    203 Cal. App. 4th 852 (2012) ............................................................ 11

*Changing the World Films, LLC v. Parker*,
    No. 1:21-cv-02787-DLF (D.D.C. Oct. 20, 2021) ................................. 2

*Cinq Music Grp., LLC v. Create Music Grp., Inc.*,
    2023 WL 3160164 (C.D. Cal. 2023) .................................................. 13

*City of Inglewood v. Teixeira*,
    2015 WL 6146269 (C.D. Cal. 2015) .................................................. 12

*Counts v. Meriwether*,
    2016 WL 1165888 (C.D. Cal. 2016) ................................. 7, 9, 10, 14

*DuckHole Inc. v. NBCUniversal Media LLC*,
    2013 WL 5797204 (C.D. Cal. 2013) .................................................... 4

*Elser v. I.A.M. Nat'l Pension Fund*,
    579 F. Supp. 1375 (C.D. Cal. 1984) .................................................. 11

*Fantasy Inc. v. Fogerty*,
    1995 WL 261504 (N.D. Cal. 1995) .................................................... 10

*Fantasy, Inc. v. Fogerty*,
    94 F.3d 553 (9th Cir. 1996) ...................................................... 5, 7, 8

iv

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994)................................................................... 3, 4, 9

*Frisby v. Sony Music Ent.*,
   2021 WL 4535787 (C.D. Cal. 2021)........................................................7

*Gable v. NBC*,
   2010 WL 11506430 (C.D. Cal. 2010) ..................................... 5, 7, 14

*Gilbert v. New Line Prods., Inc.*,
   2013 WL 653967 (C.D. Cal. 2013)................................................ 14

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ...................................................................... 14

*Inhale, Inc. v. Starbuzz Tobacco, Inc.*,
   755 F.3d 1038 (9th Cir. 2014) .........................................................1

*Intel Corp. v. Terabyte Int'l, Inc.*,
   6 F.3d 614 (9th Cir. 1993) ............................................................ 10

*Jiang v. KNTV Tel. LLC*,
   2021 WL 4710717 (N.D. Cal. 2021) ............................................ 13

*Jiang v. NBCUniversal Media, LLC*,
   2023 WL 2585655 (9th Cir. 2023) ............................................... 13

*Kirtsaeng v. John Wiley & Sons, Inc.*,
   579 U.S. 197 (2016)..................................................................... 4, 5

*Lawrence v. Sony Pictures Entertainment Inc.*,
   2011 WL 13217267 (C.D. Cal. 2011),
   *aff'd*, 534 F. App'x 651 (9th Cir. 2013)................................. 6, 9, 12

*Marcus v. ABC Signature Studios, Inc.*,
   2017 WL 5592470 (C.D. Cal. 2017)............................................. 10

*Mattel, Inc. v. Walking Mountain Prods.*,
   2004 WL 1454100 (C.D. Cal. 2004)............................................. 14

*Milton Greene Archives, Inc. v. BPI Commc'ns, Inc.*,
   2006 WL 8437390 (C.D. Cal. Mar. 8, 2006),
   *aff'd*, 320 F. App'x (9th Cir. 2009)............................................. 15

*Moore v. James H. Matthews & Co.*,
    682 F.2d 830 (9th Cir. 1982) ........................................................................... 11

*Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*,
    675 F.2d 1319 (D.C. Cir. 1982) ..................................................................... 11

*Serrano v. Unruh*,
    32 Cal. 3d 621 (1982) ..................................................................................... 13

*Shame on You Prods, Inc. v Banks*,
    32016 WL 5929245 (C.D. Cal. 2016),
    *aff'd*, 893 F.3d 661 (9th Cir. 2018) ................................................................... 5

*Sorenson v. Mink*,
    239 F.3d 1140 (9th Cir. 2001) ....................................................................... 11

*Title Tracy Anderson Mind & Body, LLC v. Roup*,
    2023 WL 6890744 (C.D. Cal. 2023) .............................................................. 12

*VMG Salsoul, LLC v. Ciccone*,
    2014 WL 12585798 (C.D. Cal. 2014) ........................................................ 9, 14

*Washington v. ViacomCBS, Inc.*,
    2021 WL 6134375 (C.D. Cal. 2021) .............................................................. 13

**Statutes**

17 U.S.C. § 505 ............................................................................................... *passim*

**Rules**

Federal Rules of Civil Procedure
    Rule 12(b)(2) ...................................................................................................... 2
    Rule 12(b)(6) ...................................................................................................... 2

DEFENDANTS' MOTION FOR ATTORNEYS' FEES

# I.    INTRODUCTION

Plaintiffs had no good-faith factual basis to bring this copyright infringement lawsuit.  Now that Defendants have won the case, the Court may—and should—award Defendants their reasonable attorney fees and costs under 17 U.S.C. § 505.  For purposes of a fee award, "[a] successful defense furthers the purposes of the Copyright Act just as much as a successful infringement suit does."  *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1043 (9th Cir. 2014).

*First*, after more than two years of litigation, and hundreds of thousands of dollars in attorney fees expended to disprove Plaintiffs' claims, Defendants obtained complete success on the merits via an award of summary judgment.

*Second*, Plaintiffs' claims were objectively unreasonable.  Plaintiffs brought this case on an unsupported "hunch" that Defendants copied their Screenplay, and then concocted a false access narrative to fill out a Complaint.  The Complaint's allegations about the alleged intermediary, Omari Hardwick, were provably false based on public information available online since 2017.  And Plaintiffs' statements about Mr. Hardwick under penalty of perjury in discovery were just made up.  They introduced no admissible evidence supporting access on summary judgment.

*Third*, Plaintiffs lacked a legitimate motivation for bringing suit.  They conducted almost no discovery, forcing Defendants to bear the burden of disproving their claims.  Despite allegations centering on TV One, ABFF, and Mr. Hardwick, they did not subpoena any of these third parties—or any of the other key participants in the 2017 Competition.  They still pushed forward after Mr. Hardwick told them in an interview that he had no involvement in the 2017 Competition.

*Fourth*, a fee award serves the purposes of the Copyright Act.  Plaintiffs must be held accountable for their decision to bring this meritless lawsuit.

*Fifth*, Defendants request **$341,425** for their fees and costs.  This amount is reasonable as it (a) is based on significantly discounted hourly rates for highly experienced attorneys, and (b) omits fees for certain timekeepers and tasks.

1

## II.    PROCEDURAL BACKGROUND

More than three years ago, on October 20, 2021, Plaintiffs filed a complaint for direct, contributory, and vicarious copyright infringement in the United States District Court for the District of Columbia.  *Changing the World Films, LLC v. Parker*, No. 1:21-cv-02787-DLF (D.D.C. Oct. 20, 2021) (the "D.C. Lawsuit"), Dkt. 1.  On April 29, 2022, Plaintiffs filed a first amended complaint.  D.C. Lawsuit, Dkt. 29.  On May 27, 2022, Defendants moved to dismiss Plaintiffs' first amended complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  D.C. Lawsuit, Dkt. 41.  The court granted the motion to dismiss on December 2, 2022, on the grounds that it lacked personal jurisdiction over any defendant.  D.C. Lawsuit, Dkt. 48.  The court did not address Defendants' other bases for dismissal.  *Id.* at 1.

Plaintiffs filed this action on December 13, 2022.  Compl., Dkt. 1.  The Complaint asserts claims for direct copyright infringement (Compl. ¶¶ 88-93) and contributory and vicarious copyright infringement.  *Id*. ¶¶ 94-111.

Defendants moved to dismiss the Complaint for failure to state a claim.  Dkt. 20.  The Court denied the motion to dismiss on September 12, 2023.  Dkt. 34.  Relevant to this motion, the Court found Plaintiffs had plausibly alleged one theory of access, that actor Omari Hardwick obtained or acted out Plaintiffs' screenplay during the 2017 Competition and transmitted it to Mr. Parker.  *Id*. at 4-6.

Defendants then sought to bifurcate this case to focus on the threshold and potentially dispositive issue of access.  Dkt. 39.  The Court granted Defendants' bifurcation motion on March 12, 2024, reasoning that "[i]f the case is resolved on a summary adjudication on the issue of access, it will save time and resources for both sides."  Dkt. 54 at 3.  Subsequently, this Court set a schedule for Phase I proceedings, limiting discovery to "the issue of access."  Dkt. 57.

The parties thereafter conducted Phase I discovery.  Plaintiffs conducted no discovery beyond serving Defendants with document requests.  Dkt. 75-2

(Defendants' Response to Plaintiffs' Statement of Genuine Disputes, or "RGD") 84.
They did not notice Mr. Parker's deposition. *Id.* And they did not serve subpoenas
on the third parties central to their access allegations: TV One, the American Black
Film Festival ("ABFF"), or Mr. Hardwick. *Id.* Defendants, meanwhile, served
document requests and interrogatories, issued third-party subpoenas, and deposed
Selton Shaw and the corporate Plaintiff, Changing the World Films, LLC. RGD 85.

The Court granted Defendants' motion for summary judgment on January 10,
2025. Dkt. 81-1. This Court "agree[d]" with Defendants that Plaintiffs' theory of
access was "too attenuated to create a genuine issue of material fact as to whether
Hardwick, and therefore Parker, had any ability or opportunity to access" Plaintiffs'
screenplay. *Id.* In any event, Plaintiffs submitted no admissible evidence
supporting their claims and had offered only "speculative" and irrelevant arguments
in their opposition brief. *Id.* at 6-8. Reasoning that "nothing in the evidentiary
record shows the requisite nexus between Hardwick and" Plaintiffs' Screenplay,
"except for Plaintiffs' own speculation," the Court granted summary judgment on
Plaintiffs' claims for direct, contributory, and vicarious copyright infringement. *Id.*
at 8. The Court explained that this outcome "is dispositive" and eliminates the need
for proceedings on other elements of Plaintiffs' copyright claims. *Id.* The Court
entered judgment in favor of Defendants the same day. Dkt. 81-2 at 2.

## III.    DEFENDANTS ARE ENTITLED TO RECOVER THEIR FEES UNDER THE COPYRIGHT ACT

The Copyright Act grants courts broad discretion to award "full costs,"
including a "reasonable attorney's fee," to prevailing parties in copyright
infringement actions. 17 U.S.C. § 505. Notably, Section 505 requires treating
prevailing defendants and prevailing plaintiffs alike. *Fogerty v. Fantasy, Inc.*, 510
U.S. 517, 534 & n.19 (1994) ("*Fogerty I*"). This "evenhanded" approach
recognizes that "a successful defense of a copyright infringement action may further

3

the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright." *Id.* at 527.

In assessing whether to award a prevailing defendant's attorneys' fees, courts generally consider the following factors: "(1) defendant's degree of success obtained on the claim, (2) the frivolousness of plaintiff's claim, (3) the objective reasonableness of plaintiff's factual and legal arguments, (4) plaintiff's motivation in bringing the lawsuit, and (5) the need for compensation and deterrence." *DuckHole Inc. v. NBCUniversal Media LLC*, 2013 WL 5797204, at *2 (C.D. Cal. 2013). This "does not represent an exhaustive list and all factors need not be met." *Id.* The U.S. Supreme Court has reaffirmed these factors, holding that they must be applied in a manner that "advances the Copyright Act's goals." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 204-05 (2016). This includes giving substantial (although not exclusive) weight to the "objective reasonableness of the losing party's position." *Id.* at 199-200. As discussed below, these factors support awarding Defendants their attorneys' fees for time spent defending against Plaintiffs' meritless copyright claims.

**A.    Defendants Achieved Complete Success In This Litigation**

The first factor "weighs the party's degree of success in a lawsuit." *DuckHole*, 2013 WL 5797204, at *2. "This factor weighs more in favor of a party who prevailed on the merits, rather than on a technical defense." *Id.* (defendants who won dismissal of infringement claim due to lack of substantial similarity entitled to recover fees).

Here, the Court granted Defendants' motion for summary judgment "in its entirety"—*on the merits* of Plaintiffs' claims and not on a technical defense. Dkt. No. 81-1 at 8. As the Court observed, a copyright plaintiff "*must* make a fact-based showing that defendant had 'access' to the plaintiff's work," because access is an essential element to a copyright infringement claim. *Id.* at 5 (emphasis added). But Plaintiffs failed to create any genuine issues of material fact as to whether

Defendants accessed their Screenplay. *Id*. at 6-8. Defendants' victory on their summary judgment motion was "dispositive" and obviates the need for any further proceedings. *Id*. at 8. This factor thus weighs strongly in favor of awarding Defendants their fees. *See Gable v. NBC*, 2010 WL 11506430, at *3 (C.D. Cal. 2010) ("Defendants' complete success in this action is undisputed, as the Court granted summary judgment in Defendants' favor. This factor undoubtedly weighs in Defendants' favor.").

**B.    Plaintiffs' Copyright Claims Were Objectively Unreasonable**

In assessing fee awards under Section 505, courts also look to whether a plaintiff's claims were "frivolous" or "objectively unreasonable." These factors are often considered together, particularly given that "[a] finding of frivolousness is not a prerequisite to award fees." *Shame on You Prods, Inc. v Banks*3 2016 WL 5929245, at *6 (C.D. Cal. 2016), *aff'd*, 893 F.3d 661 (9th Cir. 2018). *See also Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996) ("*Fogerty II*") (explaining that "a plaintiff's culpability is no longer required" for a prevailing defendant to recover fees in a copyright action). The "critical question" for these factors is "whether plaintiff's copyright claim was objectively unreasonable," *Shame on You Prods.*, 2016 WL 5929245, at *6, which must be given "substantial weight," *Kirtsaeng*, 579 U.S. at 199-200.

Plaintiffs' access allegations were objectively unreasonable. Their "theory of access was that Defendant Parker obtained the Screenplay from Omari Hardwick, who was involved in the TV One Screenplay Competition, an actor in the Film, and a friend of Parker." Dkt. 81-1 at 6. The Complaint's allegation about Mr. Hardwick's involvement was that he "was one of the actors *who played out scenes from entries* in the 2017 TV One Screenplay Competition." Compl. ¶ 80 (emphasis added).

But Plaintiffs did not have a good-faith factual basis to make this allegation. The 2017 Competition did in fact have an event where actors played out scenes

from the three finalists' entries: it was called the "Celebrity Scene Stealers" event. RGD 66.  Neither Plaintiffs' Screenplay nor Mr. Hardwick had anything to do with "Celebrity Scene Stealers."  It is undisputed that Plaintiffs' Screenplay was not a finalist in the 2017 Competition, and therefore was not featured in this celebrity event.  RGD 10.  And as to Mr. Hardwick, Plaintiffs could have easily determined—before filing the Complaint—that he was not one of the actors reading out scenes because the list of participating actors has been listed online since 2017.  Dkt. 69 at 11-12.  Plaintiffs had no response to this fact on summary judgment.  *Cf.* Dkt. 71 at 13-14.  Indeed, Plaintiffs *did not dispute* that "[i]nformation regarding the 2017 Competition 'Celebrity Scene Stealers' event has been available online from 2017 to the present," RGD 68, and Omari Hardwick "was not one of the actors who participated in the 'Celebrity Scene Stealers' event."  RGD 69.

Plaintiffs then doubled down on false claims about Mr. Hardwick in discovery.  When asked to state all facts supporting their Hardwick allegations, Plaintiffs stated **under penalty of perjury** that Mr. Hardwick "was a judge" at the 2017 Competition.  *See* Dkt. 69-2 at 6-8.  When asked about this false statement in deposition, Plaintiff Selton Shaw admitted nobody had ever told him Mr. Hardwick served as a "judge" in the 2017 Competition.  RGD 13.  Mr. Shaw merely held a subjective "belie[f]" about this fact because Mr. Hardwick (according to Mr. Shaw) had judged unspecified "similar" competitions in the past and had an unspecified "relationship" with TV One and ABFF.  RGD 14, 17.

Plaintiffs' claims were unreasonable for other reasons.  For example, they barely pursued discovery to substantiate their access allegations, leaving it to Defendants to do the heavy lifting to disprove those allegations.  RGD 84.  This lack of effort suggests that they lost faith in their theories once Defendants obtained discovery disproving them.  RGD 47-60, 66-69, 82-85.  The court in *Lawrence v. Sony Pictures Entertainment Inc.*, 2011 WL 13217267, at *2 (C.D. Cal. 2011), *aff'd*, 534 F. App'x 651 (9th Cir. 2013), observed that copyright claims were

objectively unreasonable where the plaintiff "did not put forth any evidence disputing Defendant's declarations" and "offered no admissible evidence … that most of the Defendants ever had access" to her works.  Here, too, Plaintiffs "offered no admissible evidence to refute" the fact that Omari Hardwick "had no involvement in the 2017 Competition."  Dkt. 81-1 at 8.  Instead, Plaintiffs submitted a declaration from their counsel containing inadmissible hearsay and statements lacking personal knowledge.  *Id*. at 6-7.

And in *Counts v. Meriwether*, 2016 WL 1165888 (C.D. Cal. 2016), the court granted defendants' motion for attorneys' fees, reasoning that plaintiffs' lawsuit was objectively unreasonable because they "had not presented a theory of access qualitatively stronger than that of bare corporate receipt."  *Id*. at *1.  "In particular, despite Plaintiffs' several theories of access, Plaintiffs did not establish ***any link*** between" the alleged intermediaries' exposure to the plaintiffs' screenplay and the defendants who wrote and made the television show *New Girl*.  *Id*. (emphasis added).  Here too, Plaintiffs failed to establish any "link" between Defendants, the alleged intermediary Omari Hardwick, and the Screenplay.

In sum, because Plaintiffs' access allegations were unreasonable, this factor weighs strongly in favor of granting Defendants' fee request.  *See, e.g.*, *Frisby v. Sony Music Ent.*, 2021 WL 4535787, at *6 (C.D. Cal. 2021) (reasoning that "Plaintiff advanced a frivolous copyright claim" where there were "problems with Plaintiff's case," including a lack of evidence of access); *Gable*, 2010 WL 11506430, at *5 (holding that plaintiff's copyright action was objectively unreasonable where "Plaintiff's theory of access was unsupported by the facts").

## C.    Plaintiffs' Action Lacked a Legitimate Motivation

Courts may also consider a plaintiff's "motivation" in pursuing or defending his claims.  *Fogerty II*, 94 F.3d at 558.  Improper motivation can be inferred from evidence that a party engaged in "overly aggressive litigation tactics," or pursued the infringement suit regardless of the merits of the claims.  *See Bridgeport Music,*

*Inc. v. WB Music Corp.*, 520 F.3d 588, 593 (6th Cir. 2008) (approving fee award against plaintiff based in part on plaintiff's aggressive tactics and pursuit of futile claims); *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010) (party acted in bad faith by rejecting reasonable settlement and demanding $1 million despite evidence of very minimal actual loss).

Although "a plaintiff's culpability is no longer required" for a prevailing defendant to recover fees, *Fogerty II*, 94 F.3d at 558, Plaintiffs' litigation tactics suggest an improper motivation because they continued to pursue their suit even after it became clear that their access allegations had no merit. As explained above, Plaintiffs' false contention that Mr. Hardwick was a "judge" at the 2017 Competition was the only purported evidence of their access theory disclosed in discovery. RGD 83. Plaintiff Selton Shaw later testified that this false assertion was based on nothing more than speculation. RGD 14. Additionally, Plaintiffs forced Defendants to continue litigating through summary judgment even after interviewing Mr. Hardwick about his sworn summary judgment declaration, where he confirmed the facts in his declaration, including that he did not serve as a judge for the competition. RGD 82, 84; *see also* RGD 81 (Hardwick counsel informed Plaintiffs' counsel in summer 2024 that Mr. Hardwick had no involvement in 2017 Competition). Despite all of this, Plaintiffs opposed summary judgment, insisting that Defendants had a "reasonable opportunity for access" through Omari Hardwick. Dkt. 71 at 13.

Once Plaintiffs likely realized their access theory was baseless, they abdicated any pretense of trying to prove their case, taking next to no discovery and forcing Defendants to do the hard work of putting the facts together. In the process, Defendants obtained evidence as to the "only two individuals" who received Plaintiffs' Screenplay: an independent contractor named Ron Moskovitz, who reviewed the Screenplay, and S.L. Duffy, the coordinator of the 2017 Competition. Dkt. 81-1 at 6; Supp. Freed Decl., Dkt. 75-1 ¶¶ 7, 10. Plaintiffs did not dispute

8

these facts or offer any evidence that those two individuals disseminated the
Screenplay to anyone else.  RGD 39-40, 43-44, 47-54.  Indeed, Plaintiffs did not
even mention these two individuals in their brief opposing Defendants' summary
judgment motion.  Plaintiffs proceeded to summary judgment without pursuing any
discovery from the third-party individuals or entities who were central to their
allegations: they did not take discovery from ABFF, TV One, Mr. Moskovitz, or
Ms. Duffy, and only took a brief, informal interview of Mr. Hardwick on the eve of
summary judgment.  This factor thus also justifies a fee award.  *See Counts*, 2016
WL 1165888, at *2 ("To the extent that Plaintiffs presented unsupported allegations
… the Court finds that they acted unreasonably."); *see also Lawrence*, 2011 WL
13217267, at *2 (concluding that plaintiff brought her suit for an improper purpose
where she "failed to advance any meaningful evidence in defending her FAC
against" defendants' summary judgment motion).

　　　　That Defendants are now seeking fees should come as no surprise.  In their
Complaint, Plaintiffs stated that they were seeking "an award of Plaintiffs' costs and
expenses, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505."
Compl. at 23 ¶ 7.  In other words, they "understood the potential consequences of
pursuing a claim for copyright infringement" as they "also requested attorneys' fees
and costs."  *VMG Salsoul, LLC v. Ciccone*, 2014 WL 12585798, at *5 (C.D. Cal.
2014).

**D.    A Fee Award Is Appropriate To Advance The Copyright Act's Goals**

　　　　Finally, awarding fees to a prevailing copyright defendant is proper where it
serves "to advance considerations of compensation and deterrence."  *Fogerty I*, 510
U.S. at 534 n.19 (citation and internal quotation marks omitted).  "Compensation
and deterrence would support an award of attorneys' fees … in order to 'deter this
plaintiff, and other similarly situated plaintiffs, from bringing unreasonable claims
based on a cost-benefit analysis that tells such plaintiffs that they can score big if
they win and there will be no adverse consequences if they lose.'"  *Lawrence*, 2011

1  WL 13217267, at *2 (quoting *Baker v. Urban Outfitters*, 431 F. Supp. 2d 351, 359

2  (S.D.N.Y. 2006)).

3      As discussed above, Plaintiffs' copyright claims were based on speculation

4  (and controverted by evidence available online).  But when this Court denied

5  Defendants' motion to dismiss, giving them the opportunity to pursue discovery to

6  support their allegations, Plaintiffs sat on their heels.  RGD 84.  Defendants did their

7  job for them, gathering third-party discovery from the various individuals and

8  organizations in a position to either prove or disprove Plaintiffs' access theories.

9  RGD 85.  An award of fees would deter similarly situated plaintiffs from bringing

10 easily-disproven allegations.  *See Counts*, 2016 WL 1165888, at *2 ("An award of

11 attorney's fees would also serve the purposes of compensation and deterrence in that

12 it will encourage valid copyright owners to fight for the protection of their works,

13 and discourage other plaintiffs from filing similarly meritless copyright suits.").

14      In sum, all of the relevant factors under Section 505 support a fee award here.

15  **IV.    DEFENDANTS' REQUESTED FEES ARE REASONABLE**

16      In determining a reasonable fee award under Section 505, the Court "must

17 first determine the presumptive lodestar figure by multiplying the number of hours

18 reasonably expended on the litigation by the reasonable hourly rate."  *Intel Corp. v.*

19 *Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993).  "The lodestar amount

20 presumably reflects the novelty and complexity of the issues, the special skill and

21 experience of counsel, the quality of representation, and the results obtained from

22 the litigation."  *Id*. (citation omitted).  Applying these criteria, Defendants'

23 requested fees are entirely reasonable, and should be awarded in full.[2]

24

25

26 [2] In addition to fees incurred in connection with the successful motion for summary
   judgment, Defendants are entitled to fees incurred in preparing this motion to
27 recover attorneys' fees and costs.  *See, e.g., Marcus v. ABC Signature Studios, Inc.*,
   2017 WL 5592470, at *6 (C.D. Cal. 2017); *Fantasy Inc. v. Fogerty*, 1995 WL
28 261504, at *7 (N.D. Cal. 1995) ("[T]he court finds Fogerty is entitled to fees
   incurred in connection with his application for fees during remand."), *aff'd*, 94 F.3d
   553 (9th Cir. 1996).

### A.    Defendants' Counsel's Billing Rates Are Reasonable

A reasonable hourly rate is one that is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001) (citation and internal quotation marks omitted).  Courts consider "counsel's special expertise" in the areas of law at issue in the litigation.  *Building a Better Redondo, Inc. v. City of Redondo Beach*, 203 Cal. App. 4th 852, 872 (2012).

As one court observed, "'[t]he best evidence [of an attorney's reasonable hourly billing rate] would be the hourly rate customarily charged by the [applicant] himself or by his law firm." *Elser v. I.A.M. Nat'l Pension Fund*, 579 F. Supp. 1375, 1379 (C.D. Cal. 1984) (first and third alterations in original; quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1325 (D.C. Cir. 1982)). "Unless counsel is working outside his or her normal area of practice, the billing-rate multiplier is, for practical reasons, usually counsel's normal billing rate." *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 840 (9th Cir. 1982).

Here, Defendants' defense was handled by the following Davis Wright Tremaine ("DWT") attorneys, identified along with their as-charged billing rates: Nicolas A. Jampol (Partner) – $550 for 2022 and 2023 and $580 for 2024; Jake Freed (Partner) – $480 for 2023 and $580 for 2024; Rachel Goldberg (Counsel) – $550 for 2022 and 2023; and Samantha Lachman (Associate) – $550 for 2022 and 2023 and $505 for 2024.  Freed Decl. ¶ 12.  These attorneys billed this matter at substantial discounts relative to their normal rates, and to demonstrate the reasonableness of their request, they only seek recover of the discounted rates actually charged in this case.  *Id*.  As another example of the reasonableness of this request, DWT is not seeking fees for certain attorneys who played support roles, paralegals, litigation support staff, and various administrative activities performed by the billing attorneys.  *Id*. ¶ 14.

These rates are reasonable in light of the attorneys' experience, skills, and reputations.  Freed Decl. ¶¶ 5-9.[3]  DWT is nationally recognized for its intellectual property litigation practice.  *Id.* ¶ 10; *see also City of Inglewood v. Teixeira*, 2015 WL 6146269, at *5 (C.D. Cal. 2015) ("Davis Wright Tremaine LLP ('DWT') is a nationally recognized firm in the areas of First Amendment and intellectual property litigation."); *Lawrence*, 2011 WL 13217267, at *4 (recognizing DWT "is reputable and active in litigating copyright cases in this district").

With respect to the individual attorneys, Mr. Jampol is a media and entertainment partner in the Los Angeles office of DWT.  Freed Decl. ¶ 6.  Mr. Jampol was recognized by *Variety*'s 2024 Legal Impact Report as one of Hollywood's top entertainment lawyers.  *Id*.  Mr. Freed is a commercial litigation partner in the San Francisco office of DWT who frequently litigates intellectual property disputes.  *Id*. ¶ 7.  Ms. Goldberg, counsel in the Los Angeles office of DWT, was selected to a list of "Ones to Watch" for Intellectual Property Litigation in Los Angeles by Best Lawyers in 2024.  *Id*. ¶ 8.  Ms. Lachman, an associate in the Los Angeles DWT office, specializes in media litigation.  *Id*. ¶ 9.  Given the substantive skills and reputations of Defendants' lawyers, their rates in this matter are entirely reasonable—particularly given the discounted rates requested.

The reasonableness of DWT's rates also is demonstrated by rates charged by other firms, which have been found to be reasonable in other copyright lawsuits in Southern California.  In September 2023, a court in this District applied the following rates in the lodestar calculation when awarding fees: $1,065 for a partner; $1,000 for a counsel; and $760 and $655 for mid-level associates.  *Title Tracy Anderson Mind & Body, LLC v. Roup*, 2023 WL 6890744, at *2-3 (C.D. Cal. 2023).

---

[3] To establish that its attorneys' billing rates are reasonable for the market, a prevailing party may present declarations from its own attorneys regarding the prevailing fees in the market and qualifications of the attorneys.  *See, e.g.*, *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

*Accord Washington v. ViacomCBS, Inc.*, 2021 WL 6134375, at *4 (C.D. Cal. 2021) (approving hourly rates of $850 for a partner and $633 for a senior associate); *Cinq Music Grp., LLC v. Create Music Grp., Inc.*, 2023 WL 3160164, at *4 (C.D. Cal. 2023) (approving a rate of $695 to $775 per hour for a partner); *Jiang v. KNTV Tel. LLC*, 2021 WL 4710717, at *5 (N.D. Cal. 2021) (finding $744 per hour for a DWT partner and $512 per hour for an associate reasonable); *vacated on other grounds*, *Jiang v. NBCUniversal Media, LLC*, 2023 WL 2585655 (9th Cir. 2023).

Based on the above authorities, DWT's rates for this matter are reasonable.

**B.     The Hours Expended by Defendants' Counsel Are Reasonable**

A fee award "should ordinarily include compensation for all hours reasonably spent, including those relating solely to the fee." *Serrano v. Unruh*, 32 Cal. 3d 621, 624 (1982). Defendants' request is reasonable and should be awarded in full.

*First*, Defendants' attorneys managed this case efficiently. Mr. Jampol served as lead counsel on the matter, assessing the case and formulating Defendants' litigation strategy, communicating with the client representatives, reviewing Plaintiffs' pleadings, briefing, and evidentiary materials, and substantively revising all of DWT's briefs and related documents. Freed Decl. ¶ 15. Ms. Goldberg, and later Mr. Freed, handled day-to-day management of this case, including communicating with client representatives; managing Defendants' discovery efforts, including extensive discovery disputes with Plaintiffs' counsel; managing motion practice; interviewing and deposing witnesses and developing the factual record. *Id*. ¶¶ 16-17. Finally, Ms. Lachman reviewed Plaintiffs' pleadings, briefing, and evidentiary materials, conducted legal research, drafted discovery requests and responded to Plaintiffs' discovery requests, and substantively drafted DWT's briefs and related documents. *Id*. ¶ 18. This streamlined approach avoided unnecessary duplication of work to ensure the matter's efficient, expedient resolution. As noted above, DWT does not seek fees for attorneys who played more peripheral roles in the case or for support staff. *Id.* ¶ 14.

*Second*, Defendants' motion for summary judgment was entirely successful. The U.S. Supreme Court has explained that where a prevailing party "has obtained excellent results, his attorney should recover a fully compensatory fee. Normally, this will encompass all hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). This is particularly significant because Plaintiffs were not merely seeking damages, but also equitable relief. Compl. at 22 ¶ 4.

*Third*, the hours spent by defense counsel also were reasonable in light of the complexity of the issues and the nature of the case. Freed Decl. ¶ 20. Defendants' motion for summary judgment required defense counsel to demonstrate to the Court that there was no circumstantial evidence of a "chain of events" linking Defendants and the Screenplay. Dkt. 69 at 8. This, in turn, required Defendants to show that they had no "reasonable possibility" to access the Screenplay, either through a third-party intermediary like Omari Hardwick or via another avenue. *Id.* at 9-13. In support of the summary judgment motion, counsel for Defendants (a) developed an extensive factual record including obtaining testimony from five third parties and Plaintiff Selton Shaw, and (b) researched, reviewed, and presented numerous authorities not only discussing the law, but also demonstrating the total lack of evidence supporting Plaintiffs' access theories. *Id.*

*Finally*, as noted above, the amount requested is reasonable when compared to comparable awards in similar copyright actions that proceeded to summary judgment. *See, e.g.*, *Counts*, 2016 WL 1165888, at *1 (awarding defendants $548,772.77 in fees); *VMG Salsoul*, 2014 WL 12585798, at *1 (awarding $670,117.25 in attorneys' fees and $50,055 in costs); *Gable*, 2010 WL 11506430, at *1 (awarding defendants $496,245 in attorneys' fees); *Mattel, Inc. v. Walking Mountain Prods.,* 2004 WL 1454100, at *4 (C.D. Cal. 2004) (awarding defendant $1,584,089 in attorneys' fees and $241,797.09 in costs); *Gilbert v. New Line Prods., Inc.*, 2013 WL 653967, at *1 (C.D. Cal. 2013) (noting awards of $815,701 in fees to

defendants' California counsel, and an additional $79,282 to counsel in North Carolina); *Milton Greene Archives, Inc. v. BPI Commc'ns, Inc.*, 2006 WL 8437390, at *6 (C.D. Cal. Mar. 8, 2006) (awarding more than $765,000 in attorneys' fees in copyright action), *aff'd*, 320 F. App'x (9th Cir. 2009). These authorities all support the reasonableness of Defendants' requested fees.

## V. CONCLUSION

Plaintiffs should never should have filed suit against Defendants. Their access allegations were objectively unreasonable and lacked a factual basis. Defendants prevailed completely on the merits. Under these circumstances, Defendants are entitled to recover from Plaintiffs the fees they reasonably incurred in their successful defense.

Accordingly, the Court should grant this Motion and award Defendants their attorneys' fees in the amount of $327,369.00, costs in the amount of $14,056, plus any additional fees associated with further work on this Motion, the reply, and the hearing in support of this Motion.


DATED: January 24, 2025      DAVIS WRIGHT TREMAINE LLP
NICOLAS A. JAMPOL
JOHN D. FREED
SARAH E. BURNS
SAMANTHA LACHMAN

By:   */s/ John D. Freed*
      John D. Freed

Attorneys for Defendants
NATHANIEL PARKER, TINY GIANT PRODUCTIONS, LLC, ASP FILM, LLC, TM FILM FINANCE, LLC, AND VERTICAL ENTERTAINMENT, LLC

## WORD COUNT CERTIFICATION

The undersigned, counsel of record for Defendants, certifies that this brief contains 4,763 words, which complies with the word limit of L.R. 11-6.1.


DATED: January 24, 2025

DAVIS WRIGHT TREMAINE LLP
NICOLAS A. JAMPOL
JOHN D. FREED
SARAH E. BURNS
SAMANTHA LACHMAN

By:  /s/ John D. Freed
        John D. Freed

Attorneys for Defendants
NATHÁNIEL PARKER, TINY GIANT PRODUCTIONS, LLC, ASP FILM, LLC, TM FILM FINANCE, LLC, AND VERTICAL ENTERTAINMENT, LLC

16