Joshua I. Schiller (CA Bar No. 330653)
jischiller@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Tel: (415) 293-6800
Fax: (415) 293-6899

Benjamin Margulis (admitted *pro hac vice*)
bmargulis@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards
New York, NY 10001
Tel: (212) 446-2300
Fax: (212) 446-2350

Gina A. Rossman (admitted *pro hac vice*)
grossman@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave, NW
Washington, D.C. 20005
Tel: (202) 237-2727
Fax: (202) 237-6131

Leonard Bennett (admitted *pro hac vice*)
leonard@bblegal.net
**BENNETT & BENNETT LAW GROUP, LLC**
5000 Sunnyside Avenue, No. 101
Beltsville, MD 20705
Tel: (240) 398-3140
Fax: (240) 398-3140

*Attorneys for Plaintiffs*
*Changing World Films, LLC, Selton Shaw,*
*and Langston Shaw*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHANGING WORLD FILMS, LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> NATHANIEL PARKER, et al., <br><br> Defendants. | Case No. 22-cv-09021-DMG-PVC <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY'S FEES** <br><br> Date:    May 16, 2025 <br> Time:    9:30 a.m. <br> Dept.:   Courtroom 8C <br> Judge:  Hon. Dolly M. Gee |

# **TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................6

RELEVANT FACTUAL BACKGROUND ................................................................8

    A.    Basis for Plaintiffs' Claims as Up-And-Coming … ............................8

    B.    Plaintiffs Litigated in Good Faith ........................................................9

        1.  During the Pendency of the DC Lawsuit, TV One Admitted That There Was A Connection Between TV One and Nate Parker or Omari Hardwick In Conversation With Plaintiffs' Counsel. ..........9

        2.  Plaintiffs Dismissed Spike Lee From the Lawsuit After He Filed An Affidavit Confirming His Lack of Access to the Screenplay..11

        3.  This Court Found That Plaintiffs Had Plausibly Alleged Substantial Similarity and Access in Denying Defendants' Motion to Dismiss.................................................................................................11

    C.    Plaintiffs Provided "Circumstantial" Evidence of Access in its Opposition to Defendant's Motion for Summary Judgment. .............14

ARGUMENT ...............................................................................................................15

    A.    No Award of Attorney's Fees Is Warranted In This Case.................15

        1.  The Ninth Circuit's Factors Weigh Against Any Fee Award Here…… ........................................................................................15

        2.  The Grant of Defendants' Motion for Summary Judgment Does Not Justify a Fee Award. ...............................................................15

        3.  Plaintiffs' Motivation Was To Protect Their Copyright...............16

        4.  Plaintiffs' Claim Was Not Frivolous or Unreasonable.................19

        5.  Competence and Deterrence Do Not Favor A Fee Award….........22

    B.    DWT's Claimed Fees Are Excessive and Unreasonable. ...................23

CONCLUSION...........................................................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                                                               **Page(s)**

*AAA Flag & Banner Mfg., Co. v. Flynn Signs & Graphics Inc.*,
  2010 WL 11462990 (C.D. Cal. July 19, 2010) ...................................................... 24

*Amusement Art, LLC v. Life Is Beautiful, LLC,*
  768 F. App'x 683 (9th Cir. 2019) ................................................................. 20

*Brod v. Gen. Pub. Grp., Inc.,*
  32 F. App'x 231 (9th Cir. 2002) .............................................. 16, 19, 23

*Camacho v. Bridgeport Fin., Inc.,*
  523 F.3d 973 (9th Cir. 2008) ...................................................... 24

*Classic Media, Inc. v. Mewborn,*
  532 F.3d 978 (9th Cir. 2008) ...................................................... 15

*Changing the World Films, LLC v. Parker,*
  No. 1:21-cv-02787 (D.D.C. Oct. 20, 2021) ........................................... 10

*Counts v. Meriwether,*
  2016 WL 1165888 (C.D. Cal. Mar. 9, 2016) .................................... 18, 20

*Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.,*
  122 F.3d 1211 (9th Cir. 1997) ........................................................ 24

*Ets-Hokin v. Skyy Spirits, Inc.,*
  323 F.3d 763 (9th Cir. 2003) ................................................... 15, 23

*Fogerty v. Fantasy, Inc.,*
  510 U.S. 517 (1994) ......................................................... 15, 16, 23

*Frisby v. Sony Music Ent.,*
  2021 WL 4535787 (C.D. Cal. July 13, 2021) ...................................... 20

*Gable v. Nat'l Broad. Co. ("NBC"),*
  2010 WL 11506430 (C.D. Cal. Aug. 6, 2010) ...................................... 20

*Gold Glove Prods. v. Handfield*,
    2014 WL 12560617 (C.D. Cal. June 4, 2014) ...................................................... 22

*Kamar Int'l, Inc. v. Russ Berrie & Co.*,
    657 F.2d 1059 (9th Cir. 1981) ...................................................................... 14

*Kesey, LLC v. Francis*,
    2010 WL 4235857 (D. Or. July 27, 2010) ......................................................... 23

*Kwan Software Eng'g, Inc. v. Foray Techs., LLC*,
    2014 WL 1569151 (N.D. Cal. Apr. 17, 2014) .................................................. 19

*Lawrence v. Sony Pictures Entertainment Inc.*,
    2011 WL 13217267 (C.D. Cal. Oct. 5, 2011) ............................................. 18, 20

*Marshall & Swift/Boeckh, LLC v. URS Corp.*,
    2011 WL 13128606 (C.D. Cal. May 16, 2011) ................................................. 17

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007) ...................................................................... 19

*Seltzer v. Green Day, Inc.*,
    725 F.3d 1170 (9th Cir. 2013) ...................................................................... 16

*Silberstein v. Fox Ent. Grp., Inc.*,
    536 F. Supp. 2d 440 (S.D.N.Y. 2008) ............................................................. 19

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) ...................................................................... 14

*Sweet People Apparel, Inc. v. Saza Jeans, Inc.*,
    2016 WL 6039218 (C.D. Cal. Mar. 28, 2016) ................................................ 15

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000) ........................................................................ 14

*Van Gerwen v. Guar. Mut. Life Ins. Co.*,
    214 F.3d 1041 (9th Cir. 2000) ...................................................................... 23

*Whimsicality, Inc. v. Rubie's Costume Co.*,
  836 F. Supp. 112 (E.D.N. Y 1993) ........................................................................ 21

*Zindel v. Fox Searchlight Pictures, Inc.*,
  2018 WL 6074566 (C.D. Cal. Oct. 26, 2018) ........................................................ 23

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY'S FEES
CASE NO. 2:22-cv-09021-DMG-PVC

Plaintiffs Selton Shaw, Langston Shaw, and their entertainment company Changing World Films, LLC (together "Plaintiffs") submit this memorandum in opposition to Defendants Nathaniel Parker, Tiny Giant Productions, LLC, ASP Film, LLC, (together "Parker Defendants"), TM Film Finance LLC, and Vertical Entertainment, LLC (all together "Defendants") Motion for Attorney's Fees, Dkt. 82 ("Fee Motion"). For the reasons stated herein, Defendants' Motion should be denied.

## **INTRODUCTION**

Plaintiffs had a good-faith belief that their screenplay had been taken and used to make Defendants' movie; it was this good-faith belief—and the desire to protect their copyright—that animated their lawsuit. And despite what Defendants may try to argue, there is simply no compelling evidence that Plaintiffs acted maliciously, capriciously, or in bad faith.

The purpose of the Copyright Act is to protect artists like Selton and Langston Shaw, not to punish them. Defendants' demand for fees therefore flies in the face of the Act's goals and the facts in this case given that Defendants' more-than-$300,000 demand is equal to more than *three times* what Plaintiffs have earned through *20 years* of creative pursuits. Requiring them to reimburse Defendants' fees—which, in any case, were paid for by an insurance company—would be the height of inequity. It would disrupt Plaintiffs' personal and family lives, and impose a burden on them that would be both undue and outright unjust. Such an award, in short, cannot be permitted.

Here, Defendants' arguments fail to establish their right to a fees award because the law and facts in this case do not support such an award.

*First*, Defendants repeatedly and falsely claim that Plaintiffs were not diligent in pursuing their claims and failed to conduct discovery. But Plaintiffs were the *first* party to serve discovery in the litigation—in fact, Plaintiffs served their requests for production on Defendants in September 2023. Defendants then sat on their production of _seven_ total documents until June 2024. Not to mention that Plaintiffs chased them for their production the entire time. Moreover, the bifurcated nature of this matter—

with Phase 1 being specifically limited to the issue of access—meant that Defendants could, and did, refuse to produce responsive, relevant, and discoverable materials by taking an unreasonably narrow view of what "access" meant.

Nor were Plaintiffs delinquent in pursuing third-party documents. To the contrary: Plaintiffs learned that Defendants had subpoenaed the relevant third parties in May 2024. Defendants also ***voluntarily agreed to share the third-party discovery with Plaintiffs*** (a fact omitted from Defendants' opening brief). Given this, and given that Defendants' subpoenas covered the relevant topics and third parties, there was simply no need for Plaintiffs to impose an additional burden on the cooperating parties by serving their own, overlapping subpoenas.

*Second*, Defendants' arguments essentially blame Plaintiffs for not knowing the extent of the screenplay's distribution within the competition in advance of filing. That is, Defendants blame Plaintiffs for not knowing what they did not know. But that is not a sign of bad-faith or malign purpose; it is a common reality for those who file— and pursue—a complaint based on information and belief. Here, Plaintiffs did not know, for example, the point in the competition in which they were eliminated, or how many or into which hands the screenplay passed throughout the evaluation process. This kind of information had to wait for discovery to uncover, and it is not "unreasonable" for Plaintiffs to file complaints based on information and belief regarding such facts.

*Third*, Plaintiffs conducted a good-faith inquiry. TV One's representative told Plaintiffs' counsel that TV One's records of the 2017 Competition were "disorganized" and "potentially incomplete," and that she nonetheless "believed there was a connection between TV One and Nate Parker or Omari Hardwick."

Moreover, the materials presented by Plaintiffs at the Phase 1 summary judgment (which was limited to the issue of access only) included evidence that went beyond merely arguing that there was a connection between TV One and Mr. Hardwick. The evidence also included the fact that: TV One received Plaintiffs'

1  screenplay and disseminated it to be read and judged; Omari Hardwick had previously

2  been involved with the competition's sponsoring organization; he was in fact invited

3  by that organization to attend the 2017 awards ceremony; and Mr. Hardwick went on

4  to star in the allegedly infringing Film alongside writer and director Nathaniel Parker.

5  Mr. Hardwick further admitted to having participated in film competitions as a judge

6  in the past.

7       Given the statements by TV One's representative and the facts surrounding the

8  competition and Mr. Hardwick, Plaintiffs' claims were not "unreasonable."

9       For the reasons listed above, and for further explained below, Defendants' Fee

10 Motion should be denied.[1]

## RELEVANT FACTUAL BACKGROUND

### A.    Basis for Plaintiffs' Claims as Up-And-Coming Screenwriters.

13      Selton and Langston Shaw are not professionally established screenwriters.

14 Declaration of Selton Shaw ("Selton Decl.") ¶ 3; Declaration of Langston Shaw

15 ("Langston Decl.") ¶ 2.   They both have traditional, full-time jobs to support

16 themselves and their families, and only write and work on screenplays in their spare

17 time. Selton Decl. ¶¶ 3-6; Langston Decl. ¶ 2. The revenues from their part-time

18 screenwriting are modest. Selton Decl. ¶ 7.

19      On February 15, 2017, the Shaw brothers submitted their screenplay for *A

20 Routine Stop* (the "Screenplay") to the 2017 TV One Screenplay Competition (the

21 "Screenplay Competition") with the goal of having the screenplay produced into a

22 feature film. Selton Decl. ¶ 2; Langston Decl. ¶ 3.  The Screenplay Competition is run

23 by TV One, a television network, and is supported by the American Black Film

24 Festival ("ABFF"). Ultimately, TV One did not select *A Routine Stop* as a finalist for

25 its 2017 competition.

26

---

27 [1] In the alternative, Defendants' award should be reduced for excessive and duplicative billing.
   Defendants, for example, seek an award of fees for their work on preparing a motion to dismiss
28 which was based on two previous motions—and also a motion that Plaintiffs prevailed on,
   undercutting any argument about the claims being meritless or insufficient.

Then, in 2019, the Shaw brothers learned of Defendant's Film. Selton Decl. ¶ 8; Langston Decl. ¶ 4. They were struck by the many plot lines and characters in the Film that were also featured in their Screenplay. Selton Decl. ¶¶ 8-10; Langston Decl. ¶¶ 4-5. The Shaw brothers also noted Defendant Nathaniel Parker and Omari Hardwick's involvement in the Film. Selton Decl. ¶ 12; Langston Decl. ¶ 5. Mr. Parker wrote, directed, starred in the Film, and Mr. Hardwick co-starred in the film and is Mr. Parker's long-time collaborator.

The Shaw brothers believed that Mr. Parker stole their Screenplay, and that he gained access to their Screenplay through the Screenplay Competition. Selton Decl. ¶11; Langston Decl. ¶ 5. Their belief was based on the numerous similarities between the Film and the Screenplay, in addition to the connections between Mr. Parker and Mr. Hardwick to TV One and/or the ABFF.  Selton Decl. ¶¶ 11, 14; Langston Decl. ¶ 5.

After careful consideration, the Shaw brothers decided to file suit to protect their copyright. Selton Decl. ¶¶ 15-19; Langston Decl. ¶¶ 6-7. None of their screenplays have been produced and distributed on such a large scale. Selton Decl. ¶ 2. The Shaw brothers' goal in bringing this lawsuit was to receive the credit they believed they deserved and a portion of the revenues from their underlying contributions to the Film. Selton Decl. ¶ 15; Langston Decl. ¶ 6. For up-and-coming screenwriters like the Shaw brothers, it is important that they actively protect their copyrights, since they do not have the professional acclaim or resources of Defendants to fall back on.

**B.    Plaintiffs Litigated in Good Faith.**

   1.   During the Pendency of the DC Lawsuit, TV One Admitted That There Was A Connection Between TV One and Nate Parker or Omari Hardwick In Conversation With Plaintiffs' Counsel.

Plaintiffs originally commenced this action in the United States District Court for the District of Columbia alleging that Defendants unlawfully copied, reproduced, published, copyrighted, and distributed Plaintiffs' screenplay for *A Routine Stop* and

9

brought claims for direct, contributory, and vicarious copyright infringement. *Changing the World Films, LLC v. Parker*, No. 1:21-cv-02787 (D.D.C. Oct. 20, 2021) (the "DC Lawsuit"), ECF No. 1. Plaintiffs sued both Defendants and Spike Lee (who has since been dismissed from the instant lawsuit). *Id.*

While the DC Lawsuit was pending, Plaintiffs' counsel reached out to TV One's Director of Legal and Business Affairs, Corinne Kirkland-Mercedes. Dkt. 75-2 (Defendants' Responses to Plaintiffs' Statement of Genuine Disputes, or "RGD") 87. Plaintiffs' counsel explained the nature of this case and asked Ms. Kirkland-Mercedes for information about the Screenplay Competition in a March 24, 2022 phone call. RGD 88. Ms. Kirkland-Mercedes stated that TV One's records relating to the 2017 competition were disorganized, and that the 2017 competition pre-dated her tenure, so she needed time to discuss Plaintiffs' discovery requests with her team. RGD 89-90.

Plaintiffs' counsel followed up with Ms. Kirkland-Mercedes on March 29, 2022. RGD 91. During that second phone call, Ms. Kirkland-Mercedes represented that she had met with her team, and she believed there was a connection between TV One and Nate Parker or Omari Hardwick. RGD 91-92. Ms. Kirkland-Mercedes also stated that as part of the 2017 competition, she believed portions of finalist screenplays were "acted" or "read" out loud. RGD 92.

A few weeks later, Plaintiffs' counsel called and left a voicemail for Ms. Kirkland-Mercedes to continue their conversation. RGD 93. Ms. Kirkland-Mercedes responded via email on April 28, 2022, stating that TV One had checked its "contract files" and could not confirm Plaintiffs' allegations—a statement which did not surprise Plaintiffs, since Ms. Kirkland-Mercedes had previously characterized TV One's records as disorganized. Dkt. 69-3 at 141. Ms. Kirkland-Mercedes also stated that TV One's employees did not have a "recollection" of having shared Plaintiffs' Screenplay with Mr. Parker or Mr. Hardwick—also not unexpected, given the passage of time between the 2017 competition and Ms. Kirkland-Mercedes' informal inquiry (five years later). *Id.* Notably, Ms. Kirkland-Mercedes did not deny the plausibility of

Plaintiffs' claims, or correct her earlier statement regarding Mr. Parker and Mr. Hardwick's potential involvement with TV One. *Id.*

Plaintiffs subsequently filed an amended complaint, and Defendants moved to dismiss the DC Lawsuit.  DC Lawsuit, ECF Nos. 39, 41. The court did not reach the merits of Plaintiffs' claims. Instead, it dismissed the case without prejudice for lack of personal jurisdiction. DC Lawsuit, ECF. No. 48.

    2.  <u>Plaintiffs Dismissed Spike Lee From the Lawsuit After He Filed An Affidavit Confirming His Lack of Access to the Screenplay.</u>

This lawsuit followed on December 13, 2022. Dkt. 1 ("Compl."). As in the DC Lawsuit, Plaintiffs brought claims against Spike Lee for his role in promoting the Film. (Compl. ¶ 15.) However, soon after filing the Complaint, Plaintiffs and Mr. Lee entered into settlement discussions. Plaintiffs considered the fact that Mr. Lee had submitted a declaration in the DC Lawsuit in which he expressly disclaimed having accessed the Screenplay or being involved in the Screenplay Competition: "I have never read Plaintiffs' Screenplay, and I did not know that it existed prior to the commencement of this action . . . I was not a judge and did not otherwise participate in the TV One Competition, and I did not receive a copy of Plaintiffs' Screenplay from anyone associated with that Competition, the ABFF, or, for that matter, from anyone else." Declaration of Gina Rossman ("Rossman Decl."), Ex. A at ¶¶ 14-16. Plaintiffs voluntarily dismissed Mr. Lee from the lawsuit on February 6, 2023. Dkt. 22.

In contrast, Mr. Parker never denied having accessed the Screenplay in support of the motions to dismiss filed in either lawsuit. He submitted a declaration in the DC Lawsuit which addressed his writing and filming of *American Skin*, but he remained pointedly silent on the issue of access. *See* Rossman Decl., Ex. B at ¶ 7.

    3.  <u>This Court Found That Plaintiffs Had Plausibly Alleged Substantial Similarity and Access in Denying Defendants' Motion to Dismiss.</u>

The Complaint alleges that the Film is substantially similar to the Screenplay. (Compl. ¶¶ 5, 59–74.) There are marked, specific similarities in how the plot

progresses, specific events that take place, and even in what characters appear in the two works. In both works:

- A Black man's close family member is killed during a routine traffic stop by a white police officer. (Compl. ¶ 5.)
- The white police officer who kills the unarmed black man is not charged with murder. (*Id.* ¶ 59.)
- The main character feels betrayed by the justice system and decides to take matters into his own hands to get street justice. (*Id.* ¶ 60.)
- The main character, with a group of his friends, kidnaps the white police officer involved in the shooting. (*Id.* ¶ 61.)
- The main character holds the white police officer hostage. (*Id.* ¶ 5.)
- The main character puts the white police office on trial for the murder he committed. (*Id.* ¶ 62.)
- The white police officer's trial is presented as a show trial. (*Id.* ¶ 5.)
- The main character represents the prosecution in the trial. (*Id.* ¶ 63.)
- The white officer involved in the shooting has a wife and a young son. (*Id.* ¶ 64.)
- At the beginning of the trial, the white officer who is charged says that the main character has no authority to charge him. (*Id.* ¶ 65.)
- The main character is armed with a handgun for the entire trial. (*Id.* ¶ 66.)
- The white police officer on trial explains that he was just trying to make it home. (*Id.* ¶ 67.)
- The white police officer offers a confession implicating himself and exposing the systemic racism of the police department. (*Id.* ¶ 5.)
- The main character puts his gun to the head of the white police officer to kill him after the officer is found guilty. (*Id.* ¶ 68.)
- At the last minute the main character decides not to kill the white police officer. (*Id.* ¶ 69.)

- The main character is depicted as feeling helpless and betrayed by the criminal justice system and taking matters into his own hands. (*Id.* ¶ 70.)

- The main character is described as an unshaven, intelligent Black man who has strong views on justice. (*Id.*)

- The main character's friend is portrayed as rough and with nothing to lose. (*Id.* ¶ 73.)

- One of the supporting characters is a police captain who tries to end the standoff without violence. (*Id.* ¶ 71.)

- One of the supporting characters is a prosecutor who does not indict the police officer involved in the shooting. (*Id.* ¶ 74.)

The Complaint also alleges that Defendants accessed Plaintiffs' screenplay through a chain of events based on Defendants' connections to TV One and ABFF. (Compl. ¶ 81.) Specifically, Plaintiffs allege that "Mr. Hardwick, star of *American Skin* and friend to Mr. Parker, was involved in the 2017 TV One Screenplay Competition and either provided or acted out the screenplay Plaintiffs submitted for *A Routine Stop* to Defendant Parker." (*Id.*)

This Court found in favor of Plaintiffs and denied Defendants' motion to dismiss. Dkt. 34. On substantial similarity, the Court held that (1) the plots "share enough details to meet the threshold of 'substantial' similarity," noting that both works began with a traffic stop in which the passenger is killed, continue with a publicized mock trial of the killer in which he is ultimately convicted by the mock jury, and ended with the protagonist allowing the officer to live; and (2) both works shared "specific themes," which also rose to the level of "substantial" similarity. *Id.* at 8, 10.

On access, the Court found that Plaintiffs had plausibly alleged a chain of events between Plaintiffs' Screenplay and Defendants' access to the Screenplay. *Id.* at 5-6. It stated that "[t]here is an overlap in subject matter between Hardwick's dealings with Parker because Hardwick went on to play a major role in the Film written and directed

1  by Parker. These allegations go beyond a mere speculative list of potential ways
2  Defendants could have accessed the Screenplay." *Id.* (citation omitted).

3       **C.    Plaintiffs Provided "Circumstantial" Evidence of Access in its**
4            **Opposition to Defendant's Motion for Summary Judgment.**

5       Defendants filed a motion for summary judgment on the issue of access on
6  November 5, 2024. Dkt. 69. They argued that there was no evidence connecting Mr.
7  Parker to the Screenplay. But proof of copyright infringement "is often highly
8  circumstantial." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000),
9  *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led*
10 *Zeppelin*, 952 F.3d 1051 (9th Cir. 2020). That is because "the act of copying is rarely
11 witnessed." *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 657 F.2d 1059, 1062 (9th Cir.
12 1981).

13      One way of proving access is through "a particular chain of events" established
14 "between the plaintiff's work and the defendant's access to that work[.]" *Three Boys*
15 *Music*, 212 F.3d at 482. Plaintiffs argued in their opposition that Defendants accessed
16 the Screenplay through a plausible chain of events. Dkt. 71 at 12. Specifically,
17 Plaintiffs argued that Mr. Parker obtained access to the Screenplay from Mr. Hardick,
18 based on the fact that Plaintiffs submitted their Screenplay to the 2017 Competition
19 and the 2017 Competition had ties through the ABFF to Mr. Hardwick, with whom
20 Mr. Parker worked on *American Skin*. *Id.* at 13.

21      The Court considered the following evidence: (1) Plaintiffs wrote the
22 Screenplay for *A Routine Stop*; (2) Plaintiffs submitted the Screenplay to the 2017 TV
23 One Screenplay Competition; (3) TV One distributed the Screenplay to be evaluated
24 and scored by one of its "readers"; (4) Mr. Hardwick had previously been involved in
25 the ABFF; and in fact, (5) Mr. Hardwick was invited to attend the ABFF awards
26 ceremony where the grand prize winner of the 2017 Competition was announced. Dkt.
27 79 at 3, 6.

28      Ultimately, however, the Court held that Plaintiffs' theory of access of was "too

1  attenuated to create a genuine issue of material fact as to whether Hardwick, and
2  therefore Parker, had any ability or opportunity to access the Screenplay." *Id.* at 6.  The
3  Court's order did not question the validity of Plaintiffs' copyright in the Screenplay,
4  nor did it address the issue of substantial similarity.

5       Plaintiffs' appeal of the Court's order granted summary judgment is pending.
6  Dkt. 85.[2]

7  **ARGUMENT**

8       **A.**    **No Award of Attorney's Fees Is Warranted In This Case.**

9            1. The Ninth Circuit's Factors Weigh Against Any Fee Award Here.

10      Attorney's fees may only be awarded in "exceptional cases." *Sweet People*
11  *Apparel, Inc. v. Saza Jeans, Inc.*, 2016 WL 6039218, at *2 (C.D. Cal. Mar. 28, 2016)
12  (J., Gee) (quoting *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 990 (9th Cir. 2008)).
13  The Supreme Court has identified the following non-exhaustive list of factors to be
14  considered when deciding whether to award or deny attorney's fees: "frivolousness,
15  motivation, objective unreasonableness (both in the factual and in the legal
16  components of the case) and the need in particular circumstances to advance
17  considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S.
18  517, 535 n.19 (1994). The Ninth Circuit has added the following considerations: "the
19  degree of success obtained, the purposes of the Copyright Act, and whether the chilling
20  effect of attorney's fees may be too great or impose an inequitable burden on an
21  impecunious plaintiff." *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir.
22  2003). All these factors weigh against an award of attorney's fees in this case.

23            2. The Grant of Defendants' Motion for Summary Judgment Does Not
24               Justify a Fee Award.

25      Where the "only" factor to weigh in the defendant's "favor is the degree of
26  success obtained," an award of attorney's fees is not merited. *Id.* at 766. The "goals of

27

28

[2] Plaintiffs reserve all rights relating to the appeal and any appeal that may follow a fees award.

the Copyright Act do not necessitate an award of attorney's fees" simply because the defendant prevailed. *Brod v. Gen. Pub. Grp., Inc.*, 32 F. App'x 231, 236 (9th Cir. 2002). To hold otherwise would provide for the "automatic recovery of attorney's fees by the prevailing party," which the Supreme Court rejected in *Fogerty*. 510 U.S. at 534.

Defendants' success here is incomplete. Yes, the Court granted the Defendants' motion for summary judgment. But Defendants lost on their motion to dismiss, with the Court holding that Plaintiffs had plausibly alleged both substantial similarity and access. Defendants never moved for summary judgment on the issue of substantial similarity; instead, they moved to bifurcate the proceeding (Dkt. 39) and were only granted summary judgment on the one issue of access (Dkt. 69).

The "mere fact" that Plaintiffs lost on summary judgment cannot justify Defendants' demand for attorney's fees. *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1181 (9th Cir. 2013). That is especially true given that Defendants did not win on all elements of Plaintiffs' copyright infringement claim. *See id.* (reversing award of attorney's fees where the defendant only won on "two of the four fair use factors"). But even if the Court finds in favor of Defendants on this factor, the other Ninth Circuit factors weigh heavily against a fee award.

### 3.  Plaintiffs' Motivation Was To Protect Their Copyright.

It is not bad faith for a plaintiff to sue to enforce his copyright interests against a potential infringer. *See Brod*, 32 F. App'x at 236 (holding that plaintiff's decision to resort "to the legal process was neither malicious nor frivolous," despite being proven wrong on summary judgment). The Shaw brothers had a good faith belief that Mr. Parker had stolen their Screenplay. Selton Decl. ¶¶ 11-14; Langston Decl. ¶ 5. They viewed the Film, were shocked and concerned by the numerous similarities to their Screenplay, and realized that Mr. Parker and Mr. Hardwick (both involved in the Film) had ties to TV One and/or the ABFF. Selton Decl. ¶¶ 8-14; Langston Decl. ¶ 5.

The Court's holding on access, based on subsequent discovery, is not evidence

1    that Plaintiffs "had a bad faith motive in pursuing the action." *Marshall &*
2    *Swift/Boeckh, LLC v. URS Corp.*, 2011 WL 13128606, at *2 (C.D. Cal. May 16, 2011),
3    *aff'd sub nom.*, 586 F. App'x 448 (9th Cir. 2014). Plaintiffs' theory connecting Mr.
4    Parker to the Screenplay was ultimately found to be "too attenuated," but that just
5    means Plaintiffs were wrong—not that they were acting out of ill will toward any of
6    the Defendants.

7        Defendants attempt to manufacture an "improper" motivation by
8    mischaracterizing the discovery process. Fee Mot. at 8. They claim that Plaintiffs
9    "abdicated any pretense of trying to prove their case, taking next to no discovery and
10    forcing Defendants to do the hard work of putting the facts together." *Id.* That is
11    demonstrably false. Discovery in this case was hotly contested. As Plaintiffs explained
12    in their opposition to summary judgment, their discovery efforts were obstructed by
13    Defendants at every turn. Dkt. 71 at 9-11.

14        First, Defendants unilaterally withheld their production for over six months—
15    only for Plaintiffs to discover, on June 28, 2024, that Defendants were planning to
16    produce only _seven_ total documents. RGD 96-97. Second, Defendants intentionally
17    delayed production of third-party discovery, which included documents covered by
18    Plaintiffs' First Requests for Production. RGD 100-102. Third, Defendants refused to
19    run additional search terms to supplement their deficient product. RGD 104, 106.
20    Lastly, Defendants repeatedly claimed that information relating to Mr. Parker's
21    creation and development of *American Skin* was outside the scope of Phase I
22    discovery, and refused to produce documents on that improper ground. RGD 107.

23        Plaintiffs engaged in numerous meet-and-confers with Defendants in the hopes
24    of resolving these discovery disputes without court intervention. But Defendants
25    proved intractable. On September 9, 2024, at Plaintiffs' request, the parties appeared
26    before Magistrate Judge Castillo and participated in a telephonic discovery conference.
27    Dkt. 66; RGD 105.

28        For Defendants to now turn around and suggest that Plaintiffs were somehow

absent during the discovery process is absurd. Plaintiffs **chased** Defendants for their document production for several months. And when that production proved to be deficient, Plaintiffs sought court intervention and engaged in several meet-and-confers with Defendants to resolve the parties' issues.

Defendants' real complaint is that Plaintiffs did not duplicate their efforts by serving additional subpoenas on TV One and the ABFF. But Defendants' Motion leaves out the parties' agreement—*Defendants voluntarily agreed to share the third-party discovery it received from TV One and the ABFF*. Plaintiffs saw no need to impose an additional burden on TV One and the ABFF, as they had already agreed to produce all relevant documents in their possession.

Nor was it "improper" for Plaintiffs to decide against deposing Mr. Parker. Defendants' overly aggressive discovery tactics meant that Plaintiffs did not have documents with which to confront Mr. Parker. Therefore, as explained in Plaintiffs' opposition to summary judgment, it became clear that a deposition of Mr. Parker would not have yielded fulsome or honest testimony. Dkt. 71 at 11. Defendants would have had Plaintiffs waste the parties' time to check off a box. But Plaintiffs' ultimate decision conserved the parties' resources and is proof that they were litigating in good faith.

Defendants' cases do not say otherwise. In *Counts v. Meriwether*, 2016 WL 1165888, at *2 (C.D. Cal. Mar. 9, 2016), for example, the Court found that the plaintiffs had "unnecessarily" sued "nineteen different defendants"[3] and even "fabricated claims," but that was still not enough to show bad faith. And although the Court found bad faith in *Lawrence v. Sony Pictures Entertainment Inc.*, 2011 WL 13217267, at *2 (C.D. Cal. Oct. 5, 2011), *aff'd*, 534 F. App'x 651 (9th Cir. 2013), Defendants leave out the fact that the plaintiff there had already brought a similar suit against several of the defendants and agreed to settle all claims for a nominal amount.

---

[3] Here, in contrast, Plaintiffs dropped claims against Defendant Spike Lee after being presented with a declaration expressly disclaiming his access to the Screenplay.

There is no such evidence that Plaintiffs sought to harass or force Defendants to accrue needless expenses here. Rather, Plaintiffs had a theory of access that survived a motion to dismiss, and they were allowed to test that theory at summary judgment. *See Silberstein v. Fox Ent. Grp., Inc.*, 536 F. Supp. 2d 440, 444 (S.D.N.Y. 2008) ("While the evidence presented to the Court was insufficient as a matter of law to support this claim, plaintiff's attempt to persuade the Court otherwise through standard motion practice is not sufficient to justify an award of fees."). This factor clearly weighs against Defendants. *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1120 (9th Cir. 2007) (affirming denial of attorney's fees even where the evidence regarding motive was "equivocal").

### 4.  Plaintiffs' Claim Was Not Frivolous or Unreasonable.

Plaintiffs' claim was "colorable," favoring the denial of fees. *See Brod*, 32 F. App'x at 236. There is no dispute that Plaintiffs submitted their Screenplay to the Screenplay Competition. RGD 6. TV One confirmed that it both received Plaintiffs' Screenplay and disseminated it to be read and judged. RGD 50. The evidence firmly supported the first link in the chain of access. As to the remaining links, the evidence showed that Mr. Hardwick had previously been involved with the ABFF (Dkt. 69-8 ¶ 8), that he was in fact invited by the ABFF to attend the 2017 awards ceremony (RGD 71), and that he then went on to star in the allegedly infringing Film alongside writer and director Mr. Parker (Dkt. 69-8 ¶ 3). Moreover, Mr. Hardwick admitted to having participated in film competitions as a judge in the past. Dkt. 69-8 ¶ 8.

Plaintiffs' theory of access was not unreasonable given this evidence. *See Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, 2014 WL 1569151, at *2 (N.D. Cal. Apr. 17, 2014) (holding that even where the plaintiff failed to prove access, claims were not unreasonable in light of evidence that the defendant's salesperson attempted to obtain a copy of the plaintiff's work). In fact, Plaintiffs' claims to access here are stronger than in other cases, where the court characterized the claims as "exceedingly weak"—and even in such cases, the court *still* denied attorney's fees. *See Silberstein*, 536 F.

1   Supp. 2d at 444 (holding that the plaintiff's claims were not unreasonable when the
2   evidence showed that she had tried to pitch her creation to one of the defendant's
3   corporate affiliates).

4       Defendants suggest that Plaintiffs should have known that once they submitted
5   their Screenplay to the Screenplay Competition, TV One only distributed it to
6   competition coordinator S.L. Duffy, who then sent it on to reader Ron Moskovitz, who
7   claims to have since deleted the Screenplay from his computer. Fee Mot. 8-9. But how
8   would Plaintiffs have known the total extent of TV One's distribution before
9   discovery?

10      The point remains that it *was* distributed. The fact that Plaintiffs may have been
11  wrong as to the *extent* of the distribution does not justify an award of attorney's fees.
12  *Amusement Art, LLC v. Life Is Beautiful, LLC*, 768 F. App'x 683, 687 (9th Cir. 2019)
13  ("Although AA ultimately lost, the claim was neither frivolous nor objectively
14  unreasonable. Indeed, AA held a valid, registered copyright of its heart image and
15  there were a number of striking similarities between the two splashed-heart images.").
16  Defendants' cited cases, which involve claims that were defective for multiple reasons
17  beyond a failure to prove access, are inapposite. *Counts*, 2016 WL 1165888, at *2 (a
18  comparison between the works "revealed that there were no significant points of
19  similarity" as to either plot or themes and that there were "no similarities of protectable
20  expression"); *Lawrence v. Sony Pictures Ent. Inc.*, 2011 WL 13217267, at *2 (C.D.
21  Cal. Oct. 5, 2011), *aff'd*, 534 F. App'x 651 (9th Cir. 2013) (no evidence that the
22  plaintiff owned the copyright to her alleged work or that her work was substantially
23  similar to the defendant's films); *Frisby v. Sony Music Ent.*, 2021 WL 4535787, at *5
24  (C.D. Cal. July 13, 2021) (no evidence that works were substantially similar or that
25  the plaintiff owned a copyright in the relevant music composition); *Gable v. Nat'l
26  Broad. Co. ("NBC")*, 2010 WL 11506430, at *5 (C.D. Cal. Aug. 6, 2010) (lack of
27  substantial similarities "were obvious from a review of the two works").

28

Defendants' arguments also ignore the evidence Plaintiffs submitted in support of their opposition to summary judgment. Specifically, Plaintiffs submitted the declaration of Joshua I. Schiller, in which he recounted counsels' conversations with TV One's Director of Legal and Business Affairs Corinne Kirkland-Mercedes during the pendency of the DC Lawsuit. She acknowledged that TV One's records of the 2017 Competition were "disorganized" and "potentially incomplete," but she nonetheless "believed there was a connection between TV One and Nate Parker or Omari Hardwick." *See* Dkt. 72-1 ¶¶ 3, 4. The statements of Ms. Kirkland-Mercedes provide additional factual support for Plaintiffs' claims. *See Whimsicality, Inc. v. Rubie's Costume Co.*, 836 F. Supp. 112, 120 (E.D.N. Y 1993) (finding that otherwise inadmissible affidavit could be considered "for the limited purpose of deciding the fees question").

Lastly, Defendants point to a website recounting a "Celebrity Scene Stealers" event for the 2017 Competition to argue that Plaintiffs should have known that Mr. Hardwick "was not one of the actors who participated in the 'Celebrity Scene Stealers' event." Fee Mot. at 6. But Plaintiffs never claimed that Mr. Hardwick was one of the participants in the "Celebrity Scene Stealers" event. Plaintiffs' allegations have always been more general: "Mr. Hardwick, in fact, was one of the actors who played out scenes from entries in the 2017 TV One Screenplay Competition. . . Mr. Hardwick, star of *American Skin* and friend to Mr. Parker, was involved in the 2017 TV One Screenplay Competition and either provided or acted out the screenplay Plaintiffs submitted for *A Routine Stop* to Defendant Parker." Compl. ¶¶ 80-81. Plaintiffs' allegations were consistent with Ms. Kirkland-Mercedes statements to counsel that "she believed there was a connection between TV One and Nate Parker or Omari Hardwick" and "as part of the 2017 Competition, she believed portions of finalist screenplays were 'acted' or 'read' out loud." Dkt. 72-1 ¶ 4. The "Celebrity Scene Stealers" event may have been one of the final rounds of the 2017 Competition, but it says nothing about how the screenplays were judged up until that point, and whether

1   an actor and ABFF alumnus like Mr. Hardwick was involved in earlier rounds of the
2   competition.

3       Relatedly, Defendants claim that Plaintiffs "doubled down on false claims about
4   Mr. Hardwick in discovery," citing to Plaintiffs' Amended Responses and Objections
5   to Defendants' Interrogatories (Dkt. 69-2 at 11). What Defendants fail to mention—
6   despite invoking the threat of ***perjury***—is that Plaintiffs' responses were submitted on
7   May 20, 2024, i.e., before _any_ discovery was produced in this case. Dkt. 69-2 at 17.
8   For that reason, Plaintiffs objected to Defendants' interrogatory as "premature,"
9   because it sought "the disclosure of information 'supporting' allegations while
10  discovery [was] still ongoing." Dkt. 69-2 at 11. Plaintiffs also objected "to the extent
11  that it call[ed] for Plaintiffs to form and/or come to a legal conclusion at this stage of
12  the litigation," i.e., before the production of _any_ documents. *Id.* Again, until documents
13  were produced, Plaintiffs could not have known all the people involved in the
14  Screenplay Competition and how the Screenplay passed through the judges' hands.
15  Given the statements of TV One's representative to counsel and the other evidence
16  connecting Mr. Hardwick to the ABFF and his history of participating in competitions
17  as a judge, Plaintiffs' allegations were not unreasonable.

18          5.  Competence and Deterrence Do Not Favor A Fee Award.

19      The final Ninth Circuit factor, compensation and deterrence, weighs heavily
20  against Defendants' demand for attorney's fees. Where a plaintiff was "motivated by
21  nothing other than the protection of their perceived rights under copyright law," a fee
22  award would not "advance considerations of compensation and deterrence" under the
23  Copyright Act. *Gold Glove Prods. v. Handfield*, 2014 WL 12560617, at *4 (C.D. Cal.
24  June 4, 2014). That is the exact situation here: the Shaw brothers were motivated by
25  nothing other than the protection of their rights in the Screenplay. Selton Decl. ¶ 18;
26  Langston Decl. ¶ 6. Moreover, the Shaw brothers are not serial litigants. Selton Decl.
27  ¶ 19; Langston Decl. ¶ 7. There is no need to deter them from filing any future,
28  frivolous lawsuit.

The Ninth Circuit also instructs courts to consider whether a fee award would "impose an ***inequitable burden*** on an impecunious plaintiff." *Ets-Hokin*, 323 F.3d at 766 (emphasis added) (citing *Fogerty*, 94 F.3d at 559-60). The goal is not to "discourage 'starving artists' from defending copyrights in original works due to the threat of attorney's fees." *Brod*, 32 F. App'x at 236. Granting Defendants' Fee Motion would completely undermine that goal.

Plaintiffs have submitted evidence that they are not wealthy individuals and that the award of attorney's fees would pose a great burden on them. Selton Decl. ¶¶ 20-22; Langston Decl. ¶¶ 8-9. The Shaw brothers both work two traditional jobs to support themselves and their families; they are not full-time screenwriters and have only earned a modest amount from their creative pursuits. Selton Decl. ¶¶ 3-7; Langston Decl. ¶ 2. In contrast, Defendants include corporate entities that profited from the Film and that are, most importantly, insured. Such a contrast militates against an award of attorney's fees. *See Zindel v. Fox Searchlight Pictures, Inc.*, 2018 WL 6074566, at *5 (C.D. Cal. Oct. 26, 2018) (denying attorney's fees where "Defendants include large and successful film and publishing companies whereas Plaintiff is an individual responsible for a comparatively small trust"); *Kesey, LLC v. Francis*, 2010 WL 4235857, at *11 (D. Or. July 27, 2010), *report and recommendation adopted*, 2010 WL 4257496 (D. Or. Oct. 20, 2010) (same where the losing parties were "not wealthy").

In sum, Defendants cite no authority or equitable principle that warrants a fee award, when Plaintiffs sought to enforce their copyright in good faith based on a colorable claim. A punitive award would not advance and contravenes the Act's goals.

**B.    DWT's Claimed Fees Are Excessive and Unreasonable.**

Even if the Court were inclined to award fees, Defendants have not met their burden to "submit evidence supporting the hours worked and the rates claimed." *Van Gerwen v. Guar. Mut. Life Ins. Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). Davis Wright Tremaine ("DWT") has represented Defendants in litigation over the same film

(*American Skin*) on **three** separate occasions: (1) *Hardwell v. Parker*, No. 2:21-cv-9100 (C.D. Cal. Nov. 19, 2021) (the "Hardwell Lawsuit"); (2) the DC Lawsuit; and (3) the instant lawsuit. In all three—the Hardwell Lawsuit, the DC Lawsuit, and the instant lawsuit—DWT prepared, drafted, and fully briefed motions to dismiss. Rossman Decl., Ex. C; Rossman Decl., Ex. D; Dkt. 20.

Where a copyright defendant has "all the information it needed" from a prior defense, high billing should raise "some suspicions." *Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1231-32 (9th Cir. 1997) (reversing fee award). Here, DWT billed approximately 68 hours to file its opening motion to dismiss brief—which is particularly galling because substantively, the complaint filed in the DC Lawsuit was the same as the complaint filed here.

DWT's "excessive billing" for its duplicative work cannot be passed on to Plaintiffs. *AAA Flag & Banner Mfg., Co. v. Flynn Signs & Graphics Inc.*, 2010 WL 11462990, at *4 (C.D. Cal. July 19, 2010). The Court should therefore apply a 30% reduction.[4]

## CONCLUSION

For all of the foregoing reasons, Plaintiffs request that this Court deny Defendants' motion for attorney's fees.

DATE: April 18, 2025                    Respectfully submitted,

                                        */s/ Joshua I. Schiller*
                                        Joshua I. Schiller (CA Bar No. 330653)
                                        jischiller@bsfllp.com
                                        BOIES SCHILLER FLEXNER LLP
                                        44 Montgomery Street, 41st Floor
                                        San Francisco, CA 94104

---

[4] The reduction should also apply to DWT's request for "fees-on-fees" to the extent DWT has recycled any work from the fee application it was poised to file in the Hardwell Lawsuit. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981–82 (9th Cir. 2008) (holding that trial court has discretion to reduce a fees-on-fees award where the movant's attorneys regularly represent litigants in similar cases, they are experienced with the law governing fees and the process for recouping them, and the materials submitted in this case were virtually identical to those submitted by the attorneys in other cases).

1     Tel: (415) 293-6800
2     Fax: (415) 293-6899

3     Benjamin Margulis (*admitted pro hac vice*)
4     bmargulis@bsfllp.com
      BOIES SCHILLER FLEXNER LLP
5     55 Hudson Yards
6     New York, NY 10001
      Tel: (212) 446-2300
7     Fax: (212) 446-2350

8     Gina A. Rossman (*admitted pro hac vice*)
9     grossman@bsfllp.com
      BOIES SCHILLER FLEXNER LLP
10    1401 New York Ave, NW
11    Washington, D.C. 20005
      Tel: (202) 237-2727
12    Fax: (202) 237-6131

13
14    Leonard Bennett (*admitted pro hac vice*)
      leonard@bblegal.net
15    BENNETT & BENNETT LAW GROUP,
16    LLC
      5000 Sunnyside Avenue, No. 101
17    Beltsville, MD 20705
18    Tel: (240) 398-3140
      Fax: (240) 398-3140
19

20    *Attorneys for Plaintiffs*
      *Changing World Films, LLC, Selton Shaw,*
21    *and Langston Shaw*

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY'S FEES
CASE NO. 2:22-cv-09021-DMG-PVC

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs Changing World Films, LLC, Selton Shaw, and Langston Shaw, certifies that this brief contains 6,342 words, which complies with the Court's Standing Order and L.R. 11-6.1.

Dated: April 18, 2025

*/s/ Joshua I. Schiller*
JOSHUA I. SCHILLER

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY'S FEES
CASE NO. 2:22-cv-09021-DMG-PVC